**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHEVRON CORPORATION<br>    6001 Bollinger Canyon Road,<br>    San Ramon, California 94583<br><br> and<br><br>TEXACO PETROLEUM COMPANY,<br>    6001 Bollinger Canyon Road,<br>    San Ramon, California 94583<br><br>                    Petitioners,<br><br>                        v.<br><br>THE REPUBLIC OF ECUADOR,<br>    Robles 731 y Av. Amazonas Quito,<br>    Ecuador<br><br>                    Respondent. | Civil Action No. 12-1247 |

## PETITION TO CONFIRM ARBITRAL AWARD

Petitioners Chevron Corporation ("Chevron") and Texaco Petroleum Company ("TexPet"), by and through their attorneys, King & Spalding LLP, allege and aver as follows in support of their petition (the "Petition") for entry of an order pursuant to Chapter 2 of the Federal Arbitration Act (the "FAA"): (i) confirming and recognizing the August 31, 2011 Final Award (the "Final Award"), in the arbitration between Petitioners and Respondent The Republic of Ecuador ("Ecuador"), captioned *In An Arbitration Under the Treaty Between the United States of America And The Republic of Ecuador Concerning The Encouragement And Reciprocal Protection of Investment And The UNCITRAL Arbitration Rules between Chevron-Texaco and Ecuador,* (the "Arbitration"); (ii) entering judgment in Petitioners' favor against Ecuador in the

1

amount of the Final Award with interest provided therein, plus the costs of this proceeding; and (iii) awarding Petitioners such other and further relief as the Court deems just and proper.

## PARTIES, JURISDICTION AND VENUE

1. Chevron and TexPet are corporations organized and existing under the laws of the state of Delaware. Petitioners' address is 6001 Bollinger Canyon Road, San Ramon, California 94583.

2. Ecuador is a "foreign state" for purposes of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603 (the "FSIA").

3. This Court has personal jurisdiction over Ecuador pursuant to 28 U.S.C. § 1330(b), which provides that this Court can exercise personal jurisdiction over a foreign state in an action with respect to which the foreign state is not entitled to sovereign immunity under 28 U.S.C. §§ 1605-1607.

4. Ecuador is not entitled to sovereign immunity under 28 U.S.C. § 1605 because this case falls under the exception for cases brought to confirm arbitration awards that "are or may be governed by a treaty or other international agreement in force in the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. §1605(a)(6).

5. Specifically, the Final Award is governed by the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). The New York Convention is implemented at 9 U.S.C. § 201 *et seq.*

6. In the alternative, the Final Award is governed by the Inter-American Convention on International Commercial Arbitration (the "Panama Convention"). The Panama Convention is implemented at 9 U.S.C. § 301 *et seq.*

7. This Court also has subject matter jurisdiction pursuant to Chapter 2 of the FAA because this is an action to enforce an arbitral award rendered in the Netherlands and because the United States and Ecuador are contracting states to the New York Convention.

8. Venue is proper in this District pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4).

## THE ARBITRATION

9. Petitioners Chevron and TexPet, the Claimants in the Arbitration, commenced arbitration against Ecuador, the Respondent in the Arbitration, with the submission of a Request for Arbitration dated December 21, 2006.  The Request invoked Article VII(3)(a)(iii) of the Treaty Between the United States of America and Ecuador Concerning the Encouragement and Reciprocal Protection of Investment (the "BIT").  This Article permits the submission of disputes under the BIT to arbitration under the Arbitration Rules of the United Nations Commission on International Trade Law (the "UNCITRAL Rules").

10. The Arbitral Tribunal was duly constituted and the place of arbitration was fixed as The Hague, the Netherlands.  The Arbitral Tribunal conducted hearings and issued three awards: (1) an Interim Award dated December 1, 2008, which denied Ecuador's challenge to the Arbitral Tribunal's jurisdiction; (2) a Partial Award on the Merits dated March 30, 2010, which found Ecuador liable for breaching its treaty obligations under the BIT and deferred a final decision on damages; and (3) a Final Award dated August 31, 2011, which found Ecuador liable for damages caused to the Petitioners arising from the breach of the BIT in the amount of US$ 77,739,696.94, plus pre-award compound interest totaling US$ 18,615,672.23, and post-award compound interest.  This totals approximately US$ 96,355,369.17 plus compound interest as set forth in the Final Award.  The Petition seeks confirmation of the Final Award by this Court.

3

**FACTUAL BACKGROUND**

11.     On August 6, 1973, TexPet and Gulf Oil Company ("Gulf") entered into a contract with Ecuador and CEPE, an Ecuadorian government entity (the "1973 Agreement"). The 1973 Agreement was amended in 1977 (the "1977 Agreement").

12.     The 1973 Agreement permitted TexPet to explore and exploit oil reserves in Ecuador's Amazon region, but it required TexPet to provide a percentage of its crude oil production to Ecuador to help meet Ecuadorian domestic consumption needs. Ecuador was entitled to set the domestic price at which it would purchase the crude oil from TexPet. Once it satisfied its obligation to contribute oil for domestic consumption, TexPet was free to export the remainder of its oil at prevailing international market prices, which were substantially higher than the domestic price. If, however, the oil Ecuador purchased under this arrangement was used for purposes other than to satisfy domestic consumption needs, then TexPet was entitled to receive compensation at the international market price.

13.     On March 5, 1987, an earthquake hit Ecuador. This earthquake damaged the Trans-Ecuadorian pipeline and effectively severed the connection between the oil fields and the refineries on the coast. As a result, crude oil production dropped significantly. The Trans-Ecuadorian pipeline was repaired and normal production resumed by August 1987.

14.     During this period of approximately six months, TexPet and Gulf delivered whatever oil they could transport to the appropriate refineries through an alternative pipeline known as the Colombian Pipeline. Ecuador, through CEPE, bartered fuel oil from another source -- the Esmeraldas Refinery -- in order to obtain enough crude oil to meet domestic consumption during that time.

15. After the Trans-Ecuadorian pipeline was repaired and normal crude oil production and transport resumed, Ecuador required TexPet, among other producers, to deliver approximately 1.4 million barrels of crude, the proceeds of which were used to reimburse CEPE and Ecuador for the cost of the fuel oil CEPE had bartered during the six-month period the Trans-Ecuadorian pipeline was inoperative. TexPet was compensated at the domestic price for this requisitioned crude.

16. In 1989, PetroEcuador, Ecuador's state-owned oil company, succeeded CEPE. Despite the parties' efforts, no agreement was reached to extend the 1973 Agreement, which was set to expire on June 6, 1992. As a result, TexPet, PetroEcuador, and Ecuador started negotiating the termination of the 1973 Agreement and TexPet began winding up its operations in Ecuador.

17. Between December 1991 and December 1993, TexPet filed seven breach-of-contract cases against the Ecuadorian government in Ecuadorian courts in which it claimed over US$ 553 million in damages. The cases alleged breaches by Ecuador of its obligations to TexPet under the 1973 and 1977 Agreements, as well as related violations of Ecuadorian law. TexPet alleged in five of these cases that Ecuador misstated domestic needs and consumption, and thereby appropriated more oil than it was entitled to acquire at the domestic market price under the Agreements. The sixth case concerned a *force majeure* issue arising from the events following the 1987 earthquake, and the last case concerned an alleged breach of a 1986 refinancing agreement.

18. On May 11, 1997, the BIT entered into force. The BIT is a bilateral investment treaty between the United States and Ecuador that provides, *inter alia*, certain protections to the activities in Ecuador of U.S. investors such as TexPet. Documents relevant to this Petition are authenticated by and attached as exhibits to the accompanying declaration of Edward G. Kehoe

dated July 27, 2012 (the "Kehoe Declaration"). A copy of the BIT is attached to the Kehoe Declaration as Exhibit 1.

19. The BIT provides that "an 'agreement in writing' for purposes of Article II of the New York Convention," *i.e.*, a written arbitration agreement, is created when a U.S. corporation submits a Notice of Arbitration pursuant to Article VI of the BIT. Thus, the parties' arbitration agreement consists of the BIT plus Petitioners' Notice of Arbitration. A copy of Petitioners' Notice of Arbitration is attached to the Kehoe Declaration as Exhibit 2.

20. In the years that followed, a number of events occurred involving the Ecuadorian judiciary. For example, in 2004, Ecuador's Congress dismissed members of the Constitutional Court, the Electoral Court, and the entire Supreme Court. The same session of Congress also impeached six of the recently-removed judges of the Constitutional Court. On April 15, 2005, Ecuador's President Gutiérrez declared a state of emergency, suspending certain civil rights and dismissing all of the newly-appointed judges of the Supreme Court. In 2005, Ecuador's Congress started afresh, approving amendments to the Organic Law of the Judiciary, which introduced a new mechanism to appoint judges to the Supreme Court.

21. On December 21, 2006, Petitioners filed their Notice of Arbitration commencing the arbitration proceedings at issue here and submitted their claims under the BIT to a three-member Arbitral Tribunal. At that time, six of the seven cases had been pending for 13 to 15 years before the Ecuadorian courts. The seventh case had been recently dismissed on the grounds of abandonment. The dismissal was later overturned on appeal.

22. This dispute was subject to several rounds of hearings and arbitral awards. The first hearing took place in San Jose, Costa Rica on May 19 and 20, 2008. The Arbitral Tribunal issued an Interim Award on December 1, 2008 on jurisdictional issues, finding that it had

jurisdiction to hear the case. A copy of the Interim Award is attached to the Kehoe Declaration as Exhibit 3.

23. The Arbitral Tribunal conducted a hearing on the merits of the dispute in Washington, D.C., on April 20 to 24 and April 27 to 28, 2009.

24. In the merits hearing, the Petitioners argued that through the Ecuadorian courts' 15-year delay and refusal to render a judgment in TexPet's seven cases, together with the incompetent, biased decisions and the erosion of judicial independence in Ecuador since 2004, Ecuador had violated several specific standards of protection under the BIT, including Article II(7).

25. Article II(7) of the BIT provides: "Each Party shall provide effective means of asserting claims and enforcing rights with respect to investment, investment agreements, and investment authorizations."

26. Ecuador in turn argued that Petitioners' complaints about the Ecuadorian court system were inconsistent with their prior position in related litigations on the adequacy of that court system and therefore constituted an abuse of process.

27. The Arbitral Tribunal issued its Partial Award on the Merits in favor of Petitioners and against Ecuador on March 30, 2010. A copy of the Partial Award on the Merits is attached to the Kehoe Declaration as Exhibit 4. In its Partial Award on the Merits, the Arbitral Tribunal (1) held, *inter alia*, that Ecuador breached Article II(7) of the BIT through the undue delay of the Ecuadorian courts in deciding TexPet's seven court cases and is liable for the Petitioners' resulting damages, and (2) denied Ecuador's abuse of process claims because Petitioners' prior position in related litigations that the Ecuadorian courts would be an adequate forum did not constitute a license for that country's courts to deny justice to the litigating parties.

28. The Arbitral Tribunal issued the Final Award on August 31, 2011, stating the amount of damages Ecuador owes the Petitioners for its breach of the BIT. A duly certified copy of the Final Award is attached to the Kehoe Declaration as Exhibit 5.

29. The Final Award issued by the Arbitral Tribunal provides that Ecuador must pay Petitioners US$ 77,739,696.94; plus pre-award compound interest totaling US$ 18,615,672.23; and post-award compound interest. This totals approximately US$ 96,355,369.17 plus compound interest as set forth in the Final Award.

30. The Final Award is final and binding.

31. Article VI(6) of the BIT states: "Any arbitral award rendered pursuant to this Article shall be final and binding on the parties to the dispute. Each party undertakes to carry out without delay the provisions of any such award and to provide in its territory for its enforcement."

32. Moreover, Article 32.2 of the UNCITRAL Rules states that "[t]he award shall be . . . final and binding on the parties. The parties undertake to carry out the award without delay."

33. Notwithstanding its commitment to do so, Ecuador has failed to carry out the provisions of the Final Award.

34. On July 7, 2010, Ecuador petitioned the District Court of The Hague to set aside the Interim Award and Partial Award and filed a second petition before that Court on November 30, 2011 to set aside the Final Award. On May 2, 2012, the District Court of The Hague issued a joint and consolidated decision on both petitions. The Court denied Ecuador's petitions to set aside the three arbitral awards because it found that all of Ecuador's stated grounds for setting aside the awards were meritless and ordered Ecuador, as the losing party, to pay Petitioners'

legal costs.  A duly certified copy of the District Court of The Hague judgment is attached to the Kehoe Declaration as Exhibit 6.

35. This Petition is timely pursuant to 9 U.S.C. § 207 because it is filed within three (3) years of the issuance of the Final Award.

36. No grounds exist for this Court to refuse confirmation and recognition of the Final Award.

### **COUNT I**

37. Petitioners incorporate the above paragraphs as if stated herein.

38. Pursuant to 9 U.S.C. § 207 Petitioners request that this Court confirm and recognize the Final Award and enter judgment in favor of Petitioners and against Ecuador in the amount of the Final Award with compound interest, plus the costs of this proceeding.

WHEREFORE, Petitioners Chevron and TexPet respectfully request that this Court enter an order and judgment, pursuant to 9 U.S.C. § 207 granting the relief set forth in Count I of this Petition, and awarding Petitioners such other and further relief as the Court deems just and proper.

Dated:  July 27, 2012

                                             */s/  Jeffrey S. Bucholtz*
                                             Jeffrey S. Bucholtz
                                                 Washington, D.C. Bar No. 452385
                                                 Tel.: (202) 626-2907
                                                 Fax: (202) 626-3737
                                                 jbucholtz@kslaw.com
                                             KING & SPALDING LLP
                                             1700 Pennsylvania Ave. NW, Suite 200
                                             Washington, D.C. 20006-4707

Edward G. Kehoe
   N.Y. Bar No. 2384998
   Tel.: (212) 556-2246

    Fax: (212) 556-2222  
    ekehoe@kslaw.com  
Caline Mouawad  
    N.Y. Bar No. 4056644  
    Tel.: (212) 556-2172  
    Fax: (212) 556-2222  
    cmouawad @kslaw.com  
KING & SPALDING LLP  
1185 Avenue of the Americas  
New York, NY 10036-4003  

Brian A. White  
    Ga. Bar No. 752955  
    Tel.: (404) 572-4739  
    Fax: (404) 572-5100  
    bwhite@kslaw.com  
KING & SPALDING LLP  
1180 Peachtree Street, N.E.  
Atlanta, Georgia 30309-3521  

*Attorneys for Petitioners Chevron Corporation and Texaco Petroleum Company*