# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:12−cv−01247−JEB

| | |
|---|---|
| CHEVRON CORPORATION et al v. REPUBLIC OF ECUADOR | Date Filed: 07/27/2012 |
| Assigned to: Judge James E. Boasberg | Date Terminated: 06/07/2013 |
| Demand: $96,355,369,000 | Jury Demand: None |
| Cause: 09:0202 Award under Convention on Foreign Arbitral Awards | Nature of Suit: 896 Arbitration |
| | Jurisdiction: Federal Question |

**Petitioner**

**CHEVRON CORPORATION**    represented by    **Jeffrey S. Bucholtz**
KING &SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 626−2907
Email: jbucholtz@kslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian A. White**
KING &SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
(404) 572−4739
Fax: (404) 572−5100
Email: bwhite@kslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Caline Mouawad**
KING &SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
(212) 556−2172
Fax: (212) 556−2222
Email: cmouawad@kslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Edward G. Kehoe**
KING &SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
(212) 556−2246
Fax: (212) 556−2222
Email: ekehoe@kslaw.com
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Kana Ellis Caplan**
KING &SPALDING, LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
(202) 626−2649
Email: kcaplan@kslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Skyler G. McDonald**
KING &SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
(404) 572−2814
Fax: (404) 572−5100
Email: smcdonald@kslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Petitioner**

| | | |
|---|---|---|
| **TEXACO PETROLEUM COMPANY** | represented by | **Jeffrey S. Bucholtz** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian A. White**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Caline Mouawad**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Edward G. Kehoe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kana Ellis Caplan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Skyler G. McDonald**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**REPUBLIC OF ECUADOR**                    represented by **Mark N. Bravin**
WINSTON &STRAWN LLP
1700 K Street, NW
Washington, DC 20006−3817
(202) 282−5938
Fax: (202) 282−5100
Email: mbravin@winston.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/27/2012 | 1 | | PETITION TO CONFIRM ARBITRATION against REPUBLIC OF ECUADOR (Filing fee: not paid) filed by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY. (Attachments: # 1 Summons, # 2 Civil Cover Sheet, # 3 Text of Proposed Order)(jeb, ) (Entered: 07/27/2012) |
| 07/27/2012 | 2 | | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by TEXACO PETROLEUM COMPANY (jeb, ) (Entered: 07/27/2012) |
| 07/27/2012 | 3 | | NOTICE of filing petition to confirm arbitral award by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY (jeb, ) (Entered: 07/27/2012) |
| 07/27/2012 | 4 | | DECLARATION of Edward G Kehoe by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY. (Attachments: # 1 Exhibit 1−US Ecuador BIT, # 2 Exhibit 2−Notice of Arbitration, # 3 Exhibit 3−Interim Award, # 4 Exhibit 4−Partial Award on Merits, # 5 Exhibit 5−Final Award, # 6 Exhibit 6−Dutch decision)(jeb, ) (Entered: 07/27/2012) |
| 07/27/2012 | 5 | | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by CHEVRON CORPORATION (jeb, ) (Entered: 07/27/2012) |
| 07/27/2012 | | | Case Assigned to Judge James E. Boasberg. (ls, ) (Entered: 07/30/2012) |
| 07/30/2012 | 6 | | MOTION for Issuance of Letters Rogatory *Pursuant to the Inter−American Convention of Letters Rogatory* by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY (Attachments: # 1 Text of Proposed Order, # 2 Letter Rogatory)(Bucholtz, Jeffrey) (Entered: 07/30/2012) |
| 07/30/2012 | | | Filing fee Paid: $350, receipt numbe: 4616050354 (dr) (Entered: 08/06/2012) |
| 07/31/2012 | 7 | | ORDER granting 6 Petitioners' Motion for Issuance of a Letter Rogatory. Signed by Judge James E. Boasberg on 7/31/2012. (lcjeb2) (Entered: 07/31/2012) |
| 08/03/2012 | 8 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Caline Mouawad, :Firm− King &Spalding, :Address− 1185 Avenue of the Americas, |

| | | | |
|---|---|---|---|
| | | | New York, New York 10036. Phone No. − 212 556 2172. Fax No. − 212 556 2222 by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY (Attachments: #1 Affidavit, #2 Text of Proposed Order)(Bucholtz, Jeffrey) (Entered: 08/03/2012) |
| 08/03/2012 | 9 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Kana Ellis Caplan, :Firm− King &Spalding, :Address− 1185 Avenue of the Americas, New York, NY 10036. Phone No. − 212 556 2132. Fax No. − 212 556 2222 by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY (Attachments: #1 Affidavit, #2 Text of Proposed Order)(Bucholtz, Jeffrey) (Entered: 08/03/2012) |
| 08/03/2012 | 10 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Brian A. White, :Firm− King &Spalding, :Address− 1180 Peachtree St., NE, Atlanta, GA 30309. Phone No. − 404 572 4739. Fax No. − 404 572 5100 by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY (Attachments: #1 Affidavit, #2 Text of Proposed Order)(Bucholtz, Jeffrey) (Entered: 08/03/2012) |
| 08/03/2012 | 11 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Edward G. Kehoe, :Firm− King &Spalding, :Address− 1185 Avenue of the Americas, New York, NY 10036. Phone No. − 212 556 2246. Fax No. − 212 556 2222 by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY (Attachments: #1 Affidavit, #2 Text of Proposed Order)(Bucholtz, Jeffrey) (Entered: 08/03/2012) |
| 08/03/2012 | 12 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Skyler G. McDonald, :Firm− King &Spalding, :Address− 1180 Peachtree St., NE, Atlanta, GA 30309. Phone No. − 404 572 2814. Fax No. − 404 572 5100 by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY (Attachments: #1 Affidavit, #2 Text of Proposed Order)(Bucholtz, Jeffrey) (Entered: 08/03/2012) |
| 08/06/2012 | | | MINUTE ORDER granting 8 9 10 11 12 Motions for Leave to Appear *Pro Hac Vice* of Caline Mouawad, Kana Ellis Caplan, Brian Avery White, Edward G. Kehoe, and Skyler Grace McDonald. Signed by Judge James E. Boasberg on 8/6/2012. (lcjeb3) (Entered: 08/06/2012) |
| 08/24/2012 | 13 | | Letters Rogatory Issued. (jth) (Entered: 08/24/2012) |
| 12/05/2012 | 14 | | NOTICE of Appearance by Mark N. Bravin on behalf of REPUBLIC OF ECUADOR (znmw, ) (Entered: 12/06/2012) |
| 12/05/2012 | 15 | | MOTION for Extension of Time to File Response re 1 Petition to Confirm Arbitration Award by REPUBLIC OF ECUADOR (Attachments: #1 Exhibit 1, #2 Exhibit 2, #3 Text of Proposed Order)(znmw, ) (Entered: 12/06/2012) |
| 12/07/2012 | 16 | | Memorandum in opposition to re 15 MOTION for Extension of Time to File Answer re 1 Complaint filed by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY. (Bucholtz, Jeffrey) (Entered: 12/07/2012) |
| 12/10/2012 | 17 | | REPLY to opposition to motion re 15 MOTION for Extension of Time to File Answer re 1 Complaint filed by REPUBLIC OF ECUADOR. (Bravin, Mark) (Entered: 12/10/2012) |
| 12/10/2012 | | | |

| | | | |
|---|---|---|---|
| | | | MINUTE ORDER granting 15 Motion for Enlargement of Time to Respond to Petition to Confirm Foreign Arbitral Award. The Court ORDERS that Respondent shall file its response by January 21, 2013. Signed by Judge James E. Boasberg on 12/10/2012. (lcjeb2) (Entered: 12/10/2012) |
| 12/11/2012 | | | Set/Reset Deadline: Respondent shall file its response by 1/21/2013. (ad) (Entered: 12/11/2012) |
| 01/21/2013 | 18 | | RESPONSE re 1 Complaint *Petition to Confirm Arbitral Award* filed by REPUBLIC OF ECUADOR. (Bravin, Mark) (Entered: 01/21/2013) |
| 01/21/2013 | 19 | | LARGE ADDITIONAL ATTACHMENT(S) *Declaration of Mark N. Bravin* by REPUBLIC OF ECUADOR 18 Response to Document filed by REPUBLIC OF ECUADOR. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Exhibit Exhibit 4, # 5 Exhibit Exhibit 5, # 6 Exhibit Exhibit 6, # 7 Exhibit Exhibit 7, # 8 Exhibit Exhibit 8, # 9 Exhibit Exhibit 9, # 10 Exhibit Exhibit 10, # 11 Exhibit Exhibit 11, # 12 Exhibit Exhibit 12, # 13 Exhibit Exhibit 13, # 14 Exhibit Exhibit 14, # 15 Exhibit Exhibit 15, # 16 Exhibit Exhibit 16, # 17 Exhibit Exhibit 17, # 18 Exhibit Exhibit 18, # 19 Exhibit Exhibit 19, # 20 Exhibit Exhibit 20)(Bravin, Mark) (Entered: 01/21/2013) |
| 02/07/2013 | 20 | | MOTION to Confirm *Foreign Arbitral Award* by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Bucholtz, Jeffrey) (Entered: 02/07/2013) |
| 02/07/2013 | 21 | | LARGE ADDITIONAL ATTACHMENT(S) *Declaration of Brian A. White* by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY 20 MOTION to Confirm *Foreign Arbitral Award* filed by TEXACO PETROLEUM COMPANY, CHEVRON CORPORATION. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit)(Bucholtz, Jeffrey) (Entered: 02/07/2013) |
| 02/07/2013 | 22 | | LARGE ADDITIONAL ATTACHMENT(S) *Declaration of Edward G. Kehoe* by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY 20 MOTION to Confirm *Foreign Arbitral Award* filed by TEXACO PETROLEUM COMPANY, CHEVRON CORPORATION. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(Bucholtz, Jeffrey) (Entered: 02/07/2013) |
| 02/07/2013 | 23 | | NOTICE *of Filing Declaration and Expert Opinion on Dutch Law of Jacob M.K.P. Cornegoor* by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY re 20 MOTION to Confirm *Foreign Arbitral Award* (Bucholtz, Jeffrey) (Entered: 02/07/2013) |
| 02/08/2013 | 24 | | RESPONSE re 18 Response to Document *Memorandum of Law in Opposition to Ecuador's "Opposition to Petition" (same document as [20−1] Memorandum in Support of MOTION to Confirm Foreign Arbitral Award, refiled as RESPONSE re 18 per clerk's instruction)* filed by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY. (Bucholtz, Jeffrey) (Entered: 02/08/2013) |

| | | | |
|---|---|---|---|
| 02/18/2013 | 25 | | Consent MOTION for Extension of Time to File Response/Reply *to Petition and Motion to Confirm Arbitral Award* by REPUBLIC OF ECUADOR (Attachments: # 1 Text of Proposed Order)(Bravin, Mark) (Entered: 02/18/2013) |
| 02/19/2013 | | | MINUTE ORDER granting Respondent's 25 Consent Motion for Deadlines. The Court ORDERS that: (1) Respondent shall file a consolidated memorandum of law, no longer than 42 pages, in further support of its 16 Opposition to Petitioners' 1 Petition to Confirm Foreign Arbitral Award and in opposition to Petitioners' 20 Motion to Confirm Foreign Arbitral Award by March 25, 2013; and (2) Petitioners shall file a consolidated reply memorandum of law, no longer than 32 pages, in further support of their 1 Petition and 20 Motion by April 25, 2013. Signed by Judge James E. Boasberg on 2/19/2013. (lcjeb2) (Entered: 02/19/2013) |
| 02/19/2013 | | | Set/Reset Deadlines: (1) Respondent shall file a consolidated memorandum of law, no longer than 42 pages, in further support of its 16 Opposition to Petitioners' 1 Petition to Confirm Foreign Arbitral Award and in opposition to Petitioners' 20 Motion to Confirm Foreign Arbitral Award by 3/25/2013; (2) Petitioners shall file a consolidated reply memorandum of law, no longer than 32 pages, in further support of their 1 Petition and 20 Motion by 4/25/2013. (ad) (Entered: 02/19/2013) |
| 03/25/2013 | 26 | | RESPONSE re 20 MOTION to Confirm *Foreign Arbitral Award Memorandum (1) in Further Support of Opp. to Pet. to Confirm and (2) in Opp. to Motion to Confirm* filed by REPUBLIC OF ECUADOR. (Bravin, Mark) Modified on text 3/26/2013 (td, ). (Entered: 03/25/2013) |
| 03/25/2013 | 27 | | REPLY in support of opposition re 18 Response to Document filed by REPUBLIC OF ECUADOR; (See docket entry no. 26 to view document) (td, ) (Entered: 03/26/2013) |
| 04/25/2013 | 28 | | REPLY to opposition to motion re 20 MOTION to Confirm *Foreign Arbitral Award* filed by CHEVRON CORPORATION, TEXACO PETROLEUM COMPANY. (Bucholtz, Jeffrey) (Entered: 04/25/2013) |
| 06/06/2013 | 29 | 58 | ORDER granting 20 Motion to Confirm Foreign Arbitration Award, ENTERING judgment for Petitioner. Judgment for Chevron is ENTERED in the amount of $96,355,369.17, plus compound interest calculated at the New York Prime Rate (annual) from August 31, 2011, until the date of this ORDER; and the case is DISMISSED. Signed by Judge James E. Boasberg on 6/3/2013. (lcjeb3) Modified on 6/7/2013 to include the judgment amount for the Petitioner (ad). (Entered: 06/06/2013) |
| 06/06/2013 | 30 | 35 | MEMORANDUM OPINION regarding 29 ORDER. Signed by Judge James E. Boasberg on 6/6/2013. (lcjeb3) (Entered: 06/06/2013) |
| 06/07/2013 | 31 | | CLERK'S JUDGMENT signed by Anjanie Desai, Deputy Clerk on 6/07/2013. (ad) (Entered: 06/07/2013) |
| 07/01/2013 | 32 | 7 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 29 Order on Motion to Confirm, 30 Memorandum &Opinion by REPUBLIC OF ECUADOR. Filing fee $ 455, receipt number 0090−3383775. Fee Status: Fee Paid. Parties have been notified. (Attachments: # 1 Exhibit District Court Opinion, # 2 Exhibit District Court Order)(Bravin, Mark) (Entered: 07/01/2013) |

CHEVRON CORPORATION

and

TEXACO PETROLEUM COMPANY,

               Petitioners

                  v.

THE REPUBLIC OF ECUADOR,

               Respondent

Civil Action No. 12-cv-01247 (JEB)

## NOTICE OF APPEAL

Under Federal Rules of Appellate Procedure 3 and 4(a), Respondent The Republic of Ecuador hereby provides notice of its appeal to the U.S. Court of Appeals for the District of Columbia Circuit from the June 6, 2013 Memorandum Opinion (ECF No. 30) and Order (ECF No. 29) of the U.S. District Court for the District of Columbia (Hon. James E. Boasberg) granting Petitioners' Motion to Confirm An Arbitral Award, confirming the Award, and entering judgment for Petitioners and against The Republic of Ecuador.

True and correct copies of the district court's Opinion and Order are attached as Exhibits A and B, respectively.

July 1, 2013

Respectfully submitted,

s/ *Mark N. Bravin*
Mark N. Bravin (D.C. Bar #249433)
WINSTON & STRAWN LLP
1700 K Street NW
Washington, DC  20006
(202) 282-5938
(202) 282-5100 (fax)

*Counsel for Respondent The Republic of Ecuador*

**CLERK**     Please mail copies of the foregoing Notice of Appeal to the following:

Jeffrey S. Bucholtz
KING & SPALDING LLP
1700 Pennsylvania Avenue NW, Suite 200
Washington, DC  20006
(202) 626-2907

Edward G. Kehoe
Caline Mouawad
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY  10036
(212) 556-2246

Brian A. White
KING & SPALDING LLP
1180 Peachtreet Street NE
Atlanta, GA  30309
(404) 572-4739

*Counsel for Petitioners Chevron Corp. and Texaco Petroleum Corp.*

Mark J. Langer
E. Barrett Prettyman U.S. Courthouse and William B. Bryant Annex
333 Constitution Avenue NW
Room 5205
Washington, DC  20001
(202) 216-7300

*Clerk of the U.S. Court of Appeals for the District of Columbia Circuit*

# Exhibit A

| | |
|---|---|
| CHEVRON CORPORATION and TEXACO PETROLEUM COMPANY,<br><br>      **Petitioners,**<br><br>      **v.**<br><br>**REPUBLIC OF ECUADOR,**<br><br>      **Respondent.** | **Civil Action No. 12-1247 (JEB)** |

## MEMORANDUM OPINION

Petitioners Chevron Corporation and Texaco Petroleum Company filed this action to confirm an award issued by an international tribunal under 9 U.S.C. § 207 and the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards, better known as the New York Convention. Respondent Republic of Ecuador seeks to deny such confirmation on several bases. First, Ecuador argues that this Court lacks subject-matter jurisdiction because the case does not meet the requirements of the arbitration exception to the Foreign Sovereign Immunities Act. Second, it contends that confirmation must be denied under the New York Convention because the Award was beyond the scope of the submission to arbitration and is contrary to United States public policy. Finally, it maintains that this Court should, at a minimum, stay proceedings in this matter while Ecuador attempts to have the Award set aside by courts in the Netherlands, where the Award was rendered. Disagreeing on all fronts, the Court will deny Ecuador's request and grant Chevron's Petition to Confirm the Award.

1

## I.    Background

According to the Petition, Chevron and Texaco (together "Chevron") entered into a contract with Ecuador in 1973, permitting Chevron to exploit oil reserves in Ecuador's Amazon region, on the condition that Chevron provide a percentage of its crude-oil production at a reduced price to meet Ecuadorian domestic-consumption needs.  See Pet., ¶¶ 11-12.  The agreement was amended in 1977 and expired in June 1992.  Id., ¶¶ 11, 16.  As Chevron began winding up its work in Ecuador in 1991, it filed seven breach-of-contract cases there against the Ecuadorian government, seeking over $553 million in damages for various breaches of the 1973 and 1977 agreements.  Id., ¶ 17.  These disputes largely concerned allegations that Ecuador had overstated its domestic oil-consumption needs, and appropriated more crude oil than it was entitled to acquire at the reduced price.  Id. ¶ 17.  The lawsuits remained pending in Ecuadorian courts until being incorporated into the arbitration at issue in this case in 2006.  Id., ¶ 21.

Meanwhile, in 1997, the U.S.-Ecuador Bilateral Investment Treaty (BIT) entered into force.  Id., ¶ 18; Treaty Between the United States of America and the Republic of Ecuador Concerning the Encouragement and Reciprocal Protection of Investments, U.S.-Ecuador, Aug. 27, 1993, S. Treaty Doc. No. 103-15.  The BIT generally provides certain legal protections to American and Ecuadorian investors when they engage in foreign direct investment in the reciprocal country.  It specifically provides, *inter alia*, that disputes against one of the parties arising out of such investments may be resolved by resort to binding arbitration upon request of a company or national of the other party.  Id., art. VI(3).  After more than a decade had elapsed without a determination of its claims pending in the Ecuadorian courts, Chevron filed a Notice of Arbitration in 2006 alleging that Ecuador had breached the BIT by allowing its claims to languish in those courts without a resolution.  See Pet., ¶¶ 21, 24-25.

2

A three-member arbitral Tribunal based at The Hague conducted several rounds of hearings concerning both its jurisdiction to hear the case and the merits of the dispute. Id., ¶¶ 10, 22. The Tribunal issued an Interim Award in December 2008 finding it had jurisdiction to hear the case, see Declaration of Edward G. Kehoe, Exh. 3 (Interim Award), a Partial Award on the Merits in March 2010 finding that the Ecuadorian courts' undue delay constituted a breach of the BIT, see id., Exh. 4 (Partial Award on the Merits), and a Final Award in August 2011 concerning damages. See id., Exh. 5 (Final Award on the Merits). Ecuador petitioned the District Court of The Hague to set aside the Award in July 2010, but the court denied that request in May 2012. See Pet., ¶ 34. Ecuador subsequently appealed the Dutch District Court's judgment, and its appeal remains pending. See Resp. Opp. to Pet. (ECF No. 18) at 3, 9.

Chevron now seeks an order confirming the Final Award under the New York Convention. Ecuador, not surprisingly, objects.

## II.     Analysis

Ecuador raises three arguments in an effort to derail confirmation: the Court lacks subject-matter jurisdiction under the Foreign Sovereign Immunities Act, confirmation should be denied under the New York Convention, and a stay pending appeal in the Netherlands is appropriate. The Court addresses each in turn.

### A.  Foreign Sovereign Immunities Act

Ecuador first argues that the Foreign Sovereign Immunities Act, 28 U.S.C. § 1604, deprives the Court of subject-matter jurisdiction. See Resp. Opp. to Pet. at 10. The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989). Under the statute, "a foreign state is presumptively immune from the jurisdiction of the United States courts[] unless a specified

3

exception applies." <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 355 (1993).  Because "subject matter

jurisdiction in any such action depends on the existence of one of the specified exceptions . . .

[a]t the threshold of every action in a District Court against a foreign state . . . the court must

satisfy itself that one of the exceptions applies."  <u>Verlinden B.V. v. Central Bank of Nigeria</u>, 461

U.S. 480, 493-94 (1983).  Notably, "the defendant bears the burden of proving that the plaintiff's

allegations do not bring its case within a statutory exception to immunity."  <u>Phoenix Consulting,

Inc. v. Republic of Angola</u>, 216 F.3d 36, 40 (D.C. Cir. 2000) (citing <u>Transamerican S.S. Corp. v.

Somali Democratic Republic</u>, 767 F.2d 998, 1002 (D.C. Cir. 1985)).

　　　　The FSIA provides an exception to foreign sovereign immunity for actions to confirm

certain arbitration awards.  <u>See</u> 28 U.S.C. § 1605(a)(6).  Specifically, foreign sovereigns are not

immune from suits

> in which the action is brought[] either to enforce an agreement
> made by the foreign state with or for the benefit of a private party
> to submit to arbitration all or any differences which have arisen or
> which may arise between the parties with respect to a defined legal
> relationship . . . or <u>to confirm an award made pursuant to such an
> agreement to arbitrate, if . . . the agreement or award is or may be
> governed by a treaty or other international agreement</u> in force for
> the United States calling for the recognition and enforcement of
> arbitral awards.

<u>Id.</u> (emphasis added).  Chevron asserts that its Petition falls under this exception because the

Final Award was made pursuant to the BIT and is governed by the 1958 Convention on the

Recognition and Enforcement of Foreign Arbitral Awards, also known as the New York

Convention, implemented at 9 U.S.C. §§ 201 *et seq.*  <u>See</u> Pet., ¶¶ 4-5.  This is correct.

　　　　First, the Award's own language indicates it was rendered pursuant to the BIT, an

agreement that provides for arbitration.  <u>See</u> Interim Award at 1, 39 (referring to the Award as

4

"under the BIT" and describing the BIT as one of the "principal relevant legal provisions" in the dispute).

Second, the Award is clearly governed by the New York Convention, which controls "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." Convention on the Recognition and Enforcement of Foreign Arbitral Awards, opened for signature June 10, 1958, art. I.1, 21 U.S.T. 2517. Awards are enforceable in the courts of any signatory so long as "'the place of the award . . . is in the territory of a party to the Convention.'" Creighton Ltd. v. Government of the State of Qatar, 181 F.3d 118, 121 (D.C. Cir. 1999) (quoting Restatement (Third) of Foreign Relations Law § 471 cmt. b (1987)). Because the arbitration in this matter was conducted at The Hague and the Netherlands is a party to the New York Convention, the Final Award here is governed by the Convention. See Pet., ¶ 10; U.S. Dept. of State, Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2007, § 2 at 12, available at http://www.state.gov/documents/organization/89668.pdf.

Under the law of this Circuit, moreover, the arbitration exception in § 1605(a)(6) "by its terms" applies to actions to confirm arbitration awards under the New York Convention. Creighton, 181 F.3d at 123. "Indeed, it has been said with authority that the New York Convention 'is exactly the sort of treaty Congress intended to include in the arbitration exception.'" Id. at 123-24 (quoting Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1018 (2d Cir. 1993)). The Court thus finds that Chevron has satisfied the requirements of the FSIA's arbitration exception.

Ecuador nonetheless raises a novel argument in contesting the applicability of the exception here. It contends that it never consented to arbitrate the underlying dispute in this

matter, meaning the award was not rendered "pursuant to . . . an agreement to arbitrate," and that the Court must satisfy itself of the arbitrability of the underlying dispute before finding subject-matter jurisdiction over this enforcement proceeding.  <u>See</u> Resp. Opp. to Pet. at 10-11 (citing 28 U.S.C. § 1605(a)(6)).  Ecuador, however, points to no authority – nor can the Court identify any – suggesting that the Court must conduct such an independent, *de novo* determination of the arbitrability of a dispute to satisfy the FSIA's arbitration exception.

Such an argument appears to be an attempt by Ecuador to get two bites at the apple of the merits of its dispute with Chevron, by seeking to have this Court separately determine the arbitrability of the underlying dispute under both the FSIA and the New York Convention.  The inquiry Ecuador suggests runs counter to the clear teaching of this Circuit on the purpose and role of the FSIA.  The FSIA is a jurisdictional statute that "'speak[s] to the power of the court rather than to the rights and obligations of the parties.'"  <u>Creighton</u>, 181 F.3d at 124 (quoting <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244, 274 (1994)).  Likewise, "§ 1605(a)(6) does not affect the contractual right of the parties to arbitration but only the tribunal that may hear a dispute concerning enforcement of an arbitral award."  <u>Id.</u> (citing <u>McGee v. International Life Ins. Co.</u>, 355 U.S. 220, 224 (1957)).  Inquiring into the merits of the enforcement dispute – that is, the arbitrability of the underlying claims – would involve an inquiry into the "contractual rights of the parties to arbitration" and would thus be beyond the reach of the FSIA's cabined jurisdictional inquiry.

In contrast to the unprecedented merits-based review Ecuador seeks, the Court's approach here is consistent with those of numerous other federal courts, which have engaged in only these two jurisdictional inquiries – namely, whether the award was made pursuant to an appropriate arbitration agreement with a foreign state and whether the award "is or may be"

6

governed by a relevant recognition treaty.  See, e.g., Blue Ridge Investments, LLC v. Republic

of Argentina, 902 F. Supp. 2d 367, 375 (S.D.N.Y. 2012) ("Here, Blue Ridge instituted the instant

action 'to confirm an award made pursuant to [Argentina's] agreement to arbitrate.'  The Award

is governed by the ICSID Convention, 'a treaty or other international agreement in force for the

United States calling for the recognition and enforcement of arbitral awards.  Argentina and the

United States are both signatories to the Convention. . . . Accordingly, this Court has subject

matter jurisdiction under . . . Section 1605(a)(6).") (alterations in original); Continental Casualty

Co. v. Argentine Republic, 893 F. Supp. 2d 747, 751 n.11 (E.D. Va. 2012) (collecting cases); In

the Matter of the Arbitration Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of

Ukraine, 311 F.3d 488, 494-95 (2d Cir. 2002) (finding jurisdiction under the FSIA in proceeding

to confirm arbitration award under the New York Convention); G.E. Transp. v. Republic of

Albania, 693 F. Supp. 2d 132, 136 (D.D.C. 2010) (same); Agrocomplect, AD v. Republic of

Iraq, 524 F. Supp. 2d 16, 33-34 (D.D.C. 2007) (denying jurisdiction because Iraq, where

arbitration took place, "was not a signatory to the New York Convention or (to the best of the

Court's knowledge) any other 'treaty or international agreement in force for the United States

calling for the recognition and enforcement of arbitral awards' when it entered into the contract

with the plaintiff") (quoting 28 U.S.C. § 1605(a)(6)).

    In any event, the Court's analysis in Section III.B, *infra*, affirms – albeit under a

somewhat deferential standard of review – that Ecuador did consent to arbitration.  Respondent's

FSIA argument would thus be unlikely to prevail even if reviewed on its merits.  Indeed, in any

dispute where a respondent argues under the New York Convention that the award was beyond

the arbitrator's power, such merits inquiry will always occur.  See New York Convention, art.

V(1)(c) (Court may deny confirmation where award beyond scope of submission to arbitration).

7

There is thus no prejudice to either party that would be incurred by a Court's not engaging in the same analysis twice.

      B.  <u>New York Convention</u>

      The Federal Arbitration Act, 9 U.S.C. §§ 201-208, codifies the New York Convention. Pursuant to the Convention, a district court "shall confirm the [arbitral] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. "Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution' recognized by the Supreme Court . . . the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards." <u>Belize Social Development Ltd. v. Government of Belize</u>, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 631 (1985)). Courts "may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention." <u>TermoRio S.A. E.S.P. v. Electranta S.P.</u>, 487 F.3d 928, 935 (D.C. Cir. 2007) (quoting <u>Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.</u>, 126 F.3d 15, 23 (2d Cir. 1997)) (quotation marks omitted); <u>see also</u> <u>Int'l Trading & Indus. Inv. Co. v. Dyncorp Aerospace Tech.</u>, 763 F. Supp. 2d 12, 19 (D.D.C. 2011) (collecting cases). Because "the New York Convention provides only several narrow circumstances when a court may deny confirmation of an arbitral award, confirmation proceedings are generally summary in nature." <u>Int'l Trading</u>, 763 F. Supp. 2d at 20 (citing <u>Zeiler v. Deitsch</u>, 500 F.3d 157, 167 (2d Cir. 2007)). The party resisting confirmation bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies. <u>See</u> New York Convention, art. V; <u>Imperial Ethiopian Gov't v. Baruch-Foster Corp.</u>, 535 F.2d 334, 336 (5th Cir. 1976); <u>see also</u> <u>Ottley v. Schwartzberg</u>, 819

8

F.2d 373, 376 (2d Cir. 1987) ("[T]he showing required to avoid summary confirmation is high.").

In contending that the Award here should not be enforced, Ecuador relies on two of the grounds for denying confirmation set forth in Article V. See Resp. Opp. to Pet. at 23-25. First, It invokes Article V(1)(c), which allows a court to deny confirmation where "[t]he award deals with a difference . . . not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." Second, Ecuador argues that confirmation may be denied under Article V(2)(b), which allows for denial of confirmation where "the recognition or enforcement of the award would be contrary to the public policy" of the country where confirmation is sought. Neither ground is availing.

### 1. *Article V(1)(c): Arbitrability*

Ecuador first asserts that confirmation may be denied under Article V(1)(c) because it "never agreed – with the United States or with Chevron – to arbitrate the claims in the pending litigation or Chevron's Treaty claim of undue delay concerning that litigation." See Resp. Opp. to Pet. at 9. It contends that since the Tribunal's decision on the arbitrability of the underlying dispute was incorrect, the Final Award was "beyond the scope of the submission to arbitration." See New York Convention, art. V(1)(c). To reach such a conclusion, Ecuador suggests that this Court must engage in an "independent determination" of the Tribunal's jurisdiction to resolve the underlying dispute. See Resp. Reply and Opp. at 5-8. Chevron disagrees, claiming instead that because the parties "clearly and unmistakably" agreed that the Tribunal should decide the arbitrability of the dispute, this Court's review of that decision should be highly deferential, a standard the Tribunal's reasoned decision entirely satisfies. See Pet. Opp. and Mot. (ECF No. 20) at 15. Chevron has the better of this debate.

9

Ecuador maintains that this Court must conduct a *de novo* review of the Tribunal's decision on jurisdiction because, in the ordinary case, "the question of arbitrability . . . is undeniably an issue for judicial determination." AT&T Tech., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 649 (1986); see also Resp. Opp. to Pet. at 12 (citing Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2855 (2010), and First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995)). Ecuador, however, mischaracterizes the holdings of these cases, none of which provides that arbitrability is an issue for judicial determination in all circumstances. For example, while the AT&T Technologies court noted that, ordinarily, arbitrability is an issue for judicial determination, it held that where "the parties clearly and unmistakably provide otherwise" – *e.g.*, where they have submitted the arbitrability of the dispute to the arbitrators – the arbitrator determines the arbitrability of the dispute in the first instance. See 475 U.S. at 649; see also, e.g., First Options, 514 U.S. at 943 ("We agree with First Options, therefore, that a court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration."). Granite Rock, by contrast, concerned a case where there was no dispute about who should determine arbitrability. See 130 S. Ct. at 2856 (noting that on those facts, "[t]he parties agree[d] that it was proper for the District Court to decide whether their ratification dispute was arbitrable").

In cases where the parties have clearly and unmistakably delegated the question of arbitrability to the arbitrator, a court may review that arbitrability decision, but it "should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." First Options, 514 U.S. at 943. Indeed, at least one federal circuit has explicitly rejected the position Ecuador takes here, holding that where the parties "clearly and unmistakably agreed to arbitrate issues of arbitrability," the party resisting confirmation of the

10

award "is not entitled to an independent judicial redetermination of that same question."
Schneider v. Kingdom of Thailand, 688 F.3d 68, 74 (2d Cir. 2012). To the extent that the parties
here have "clearly and unmistakably" agreed to arbitrate arbitrability, then, this Court must give
substantial deference to that decision. In a confirmation proceeding where arbitrability has been
clearly and unmistakably delegated to the arbitrator, "the [New York] Convention . . . does not
sanction [a Court's] second-guessing the arbitrator's construction of the parties' agreement."
Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier
(RATKA), 508 F.2d 969, 977 (2d Cir. 1974).

In deciding this question, the Court first considers whether an agreement to arbitrate
exists at all, then analyzes whether such agreement intended the Tribunal to determine questions
of arbitrability, and ends with a review of the Tribunal's decision on that issue in this case.

a. Existence of an Agreement to Arbitrate

To begin, Chevron asserts that the "plain language" of the U.S.-Ecuador BIT
demonstrates Ecuador's consent to arbitrate this dispute. See Pet. Opp. and Mot. at 14. In its
view, Article VI of the BIT constitutes "a standing offer to arbitrate any 'investment dispute'
brought by a U.S. 'national or company.'" See id. at 14-15 (citing U.S.-Ecuador BIT, art. VI §
4(b)). This position is bolstered by two recent Second Circuit decisions interpreting bilateral
investment treaties as creating written agreements to arbitrate for purposes of the New York
Convention on facts similar to these. In a case involving both the U.S.-Ecuador BIT and a
dispute between our same parties Chevron and Ecuador, the Second Circuit explained:

> The BIT provides that "an 'agreement in writing' for purposes of
> Article II of the . . . New York Convention" is created when a
> foreign company gives notice in writing to a BIT signatory and
> submits an investment dispute between the parties to binding
> arbitration in accordance with Article VI of the Treaty. All that is
> necessary to form an agreement to arbitrate is for one party to be a

11

> BIT signatory and the other to consent to arbitration of an
> investment dispute in accordance with the Treaty's terms. In
> effect, Ecuador's accession to the Treaty constitutes a standing
> offer to arbitrate disputes covered by the Treaty; a foreign
> investor's written demand for arbitration completes the "agreement
> in writing" to submit the dispute to arbitration.

Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 392-93 (2d Cir. 2011) (emphasis added) (internal citations omitted). Likewise, when interpreting the Germany-Thailand BIT, the same court held that "[t]he existence of an arbitration agreement [between the investor and Thailand] is beyond dispute. Thailand, 'by signing the [treaty], and [the investor] by consenting to arbitration, have created a separate binding agreement to arbitrate.'" Schneider, 688 F.3d at 71-72 (quoting Chevron, 638 F.3d at 392). Although these decisions are not binding on this Court, given the Second Circuit's sound reasoning regarding directly comparable facts, the Court sees no reason to deviate from this approach here. This is, furthermore, a point Ecuador does not truly contest.

Because the BIT constitutes Ecuador's "standing offer" to arbitrate, all Chevron must show is that it was a U.S. "company or national" that submitted an "investment dispute" in order for the Court to find it had a binding arbitration agreement with Ecuador. No one disputes that Chevron is a U.S. company or national. The BIT defines an "investment dispute" to include "an alleged breach of any right conferred or created by this Treaty with respect to an investment." See U.S. Ecuador BIT, art. VI § 1. Because Chevron alleged that "Ecuador breached Article II(7) of the BIT through the undue delay of the Ecuadorian courts" in deciding Chevron's breach-of-contract cases regarding its initial investment in Ecuador, see Pet., ¶ 27, it properly requested arbitration of an "alleged breach of [a] right conferred by [the BIT] with respect to an investment." See Section III.B.1.c, *infra* (discussing definition of investment). The Court thus finds it had a valid agreement to arbitrate under the BIT.

12

### b. Who Determines Arbitrability?

Having determined that the parties here entered into a valid agreement to arbitrate, the Court must now inquire whether that agreement "clearly and unmistakably" shows that they intended the Tribunal to decide questions of arbitrability. In this case, the U.S.-Ecuador BIT, which forms the basis of the agreement to arbitrate, provides that arbitration may be conducted "in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law (UNCITRAL)." See U.S.-Ecuador BIT, art. VI § 3(a)(iii). Article 21 of the UNCITRAL rules requires that the arbitral tribunal "shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the . . . arbitration agreement." UNCITRAL Arbitration Rules, art. 21, ¶ 1, G.A. Res. 31/98, U.N. Doc. A/RES/31/98 (Dec. 15, 1976). In this Circuit, clear and binding precedent dictates that in the context of a bilateral investment treaty, "incorporation of the UNCITRAL Rules provides clear[] and unmistakabl[e] evidence[] that the parties intended for the arbitrator to decide questions of arbitrability." Republic of Argentina v. BG Group PLC, 665 F.3d 1363, 1371 (D.C. Cir. 2012) (alterations in original) (internal quotation marks omitted). Indeed, the D.C. Circuit is not alone in this regard; the Second and Ninth Circuits have both reached the same conclusion. See Chevron, 638 F.3d at 394; Wal-Mart Stores, Inc. v. PT Multipolar Corp., No. 98-16952, 1999 WL 1079625, at *2 (9th Cir. Nov. 30, 1999). And, indeed, Ecuador wisely yields to the unequivocal authority on this issue. See Resp. Reply and Opp. (ECF No. 26) at 6. The Court, accordingly, finds that the parties here clearly and unmistakably agreed to have the arbitrator resolve issues of arbitrability.

### c. Deferential Review of Tribunal's Decision

Having so found, the Court may now engage in only deferential review of the Tribunal's decision, granting "considerable leeway to the arbitrator." First Options, 514 U.S. at 943. At the outset, it is worth noting that the "beyond the scope" defense to confirmation "should be construed narrowly" and that the party resisting confirmation on such basis "must . . . overcome a powerful presumption that the arbitral body acted within its powers." Parsons, 508 F.2d at 976. Indeed, such limited review is consistent with "the basic purposes of arbitration: to resolve disputes speedily and to avoid the expense and delay of extended court proceedings." Fed. Commerce & Nav. Co. v. Kanematsu-Gosho, Ltd., 457 F.2d 387, 389 (2d Cir. 1972); see also Rich v. Spartis, 516 F.3d 75, 81 (2d Cir. 2008) (arbitration awards subject to very limited review "in order to avoid undermining the twin goals of arbitration").

Unfortunately, the precise nature of the limited review contemplated by First Options is not clear from the cases that follow. See Schneider, 688 F.3d at 74 (expressing "no opinion on the precise standard for [deferential] review"). Ecuador, for example, contends that "the court should consider the arbitrators' reasoning [and i]f it does not hold up under scrutiny, it should be rejected," see Resp. Reply and Opp. at 8, but it offers no authority for this position.

The Court need not determine exactly what standard of deference to employ, as even under a very mildly deferential standard, the Tribunal's decision appears well reasoned and comprehensive. In no way is it so erroneous, unjust, or unclear that this Court would be empowered to set it aside.

The Tribunal here consisted of three learned arbitrators, one chosen by Chevron, one chosen by Ecuador, and one chosen by the first two arbitrators with the consent of the parties. See Interim Award at 13. No one contends that the arbitrators were biased, inexperienced, or otherwise inadequate. The Tribunal held eleven days of hearings, four of which were solely

14

devoted to jurisdiction. See id. at 25-26. It ultimately produced a 140-page opinion concerning arbitrability alone and addressing eight potential jurisdictional issues. See id. at 63-138. Ecuador thus cannot claim that the Award should be set aside for the Tribunal's failure to thoroughly engage with the issues or the parties' arguments.

Looking beyond the comprehensiveness of the Tribunal's work to its reasoning, the Court again finds no reason for reversal. At arbitration, Ecuador contended that the underlying breach-of-contract and unreasonable-delay disputes were nonarbitrable because they were not covered by the U.S.-Ecuador BIT, arguing variously that the BIT did not cover investments that had "expired" prior to its entry into force and that, in any case, the surviving breach-of-contract claims could not constitute "investments" under the Treaty. See id., ¶¶ 59, 79. The Tribunal disagreed. It noted that the BIT defines "investments" to include "a claim to money or a claim to performance having economic value, and associated with an investment." Id., ¶ 179. The Tribunal "agreed with [Chevron] that . . . [the underlying lawsuits] concern the liquidation and settlement of claims relating to [Chevron's initial investment in Ecuador] and, therefore, form part of that investment." Id., ¶ 180. It further observed that treaty language "giv[ing] a further non-exhaustive list of forms that an investment may take" and "provid[ing] that '[a]ny alteration of the form in which assets are invested or reinvested shall not affect their character as [an] investment'" bolstered its conclusion that "once an investment is established, it continues to exist and be protected [by the BIT] until its ultimate 'disposal' has been completed – that is, until it has been wound up." Id., ¶¶ 181, 183. It then concluded that Chevron's "investments have not ceased to exist: their lawsuits continued their original investment through the entry into force of the BIT and to the date of commencement of this arbitration." Id., ¶ 184.

15

The Court can find nothing objectionable about this conclusion, which is based on the plain text of the BIT. Although the Tribunal discusses other jurisdictional arguments throughout the rest of the Interim Award, this analysis is alone sufficient to survive even the more searching form of review Ecuador contends is applicable here. Indeed, if the Court were asked the same question in the first instance, such plain-meaning analysis would likely end the matter, as it does in the interpretation of contracts, judgments, and statutes. See, e.g., Travelers Indem. Co. v. Bailey, 557 U.S. 137, 150 (2009) ("[W]here the plain terms of a court order unambiguously apply . . . they are entitled to their effect."); Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) ("[W]hen the words of a statute are unambiguous . . . this first canon is also the last: 'judicial inquiry is complete.'"); In re Fitzgerald Marine & Repair, Inc., 619 F.3d 851, 859 (8th Cir. 2010) ("Where the written instrument is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe [it accordingly].") (quotation and citations omitted).

Because the Treaty plainly states that an "investment" includes "a claim to money . . . associated with an investment" and dictates that "an investment . . . continues to exist . . . until it has been wound up," the Tribunal's reasoning that Chevron's breach-of-contract lawsuits were unexpired "investments" for purposes of the BIT more than "holds up under scrutiny." As the Tribunal's arbitrability decision survives the deferential review required in this circumstance, the Court cannot find that the Final Award is "beyond the scope" of the submission to arbitration and will not deny confirmation on this basis.

### 2. *Article V(2): Public Policy*

Ecuador also argues that confirmation must be denied because the award contravenes the public policy of the United States. See Resp. Opp. to Pet. at 24-25. The public-policy exception

16

under the New York Convention is construed extremely narrowly and applied "only where

enforcement would violate the forum state's most basic notions of morality and justice."

Parsons, 508 F.2d at 974 (citing Restatement (Second) of Conflict of Laws § 117, cmt. c (1971));

see also Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v.

Cubic Defense Systems, Inc., 665 F.3d 1091, 1097 (9th Cir. 2011); TermoRio S.A. E.S.P., 487

F.3d at 938; Admart AG v. Stephen & Mary Birch Found., Inc., 457 F.3d 302, 308 (3d Cir.

2006); Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,

364 F.3d 274, 306 (5th Cir. 2004); Slaney v. Int'l Amateur Athletic Fed'n, 244 F.3d 580, 593

(7th Cir. 2001); M&C Corp. v. Erwin Behr GmbH & Co., KG, 87 F.3d 844, 851 n.2 (6th Cir.

1996). The "provision was not meant to enshrine the vagaries of international politics under the

rubric of 'public policy,'" and it does not provide that awards that might contravene U.S.

interests may be resisted on such grounds. Parsons, 508 F.2d at 974. Likewise, "[a]lthough this

defense is frequently raised, it 'has rarely been successful.'" Cubic Defense Systems, 665 F.3d

at 1097 (quoting Andrew M. Campbell, Annotation, Refusal to Enforce Foreign Arbitration

Awards on Public Policy Grounds, 144 A.L.R. Fed. 481 (1998 & supp.)).

Ecuador points to no such "basic notion of morality and justice" that would be offended

by the enforcement of the Award here; in fact, its public-policy argument is primarily a

rehashing of its position that the Award was beyond the scope of the submission to arbitration. It

also contends that enforcement would violate "strong public policies respecting foreign

sovereignty and the autonomy of ongoing judicial proceedings." See Resp. Reply and Opp. at

16. Neither argument meets the extraordinarily high threshold required by the public-policy

defense.

As to Ecuador's first argument – that the Award was beyond the scope – both the Tribunal and this Court have separately found that Ecuador did consent to arbitrate this dispute. In fact, it could just as easily be argued that enforcing the Award here furthers the strong U.S. policy of "ensur[i]ng that private arbitration agreements are enforced according to their terms." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748 (2011) (citation and quotation marks omitted); New York Convention, art. II. Indeed, analysis of a proposed public-policy defense "begins with the strong public policy favoring confirmation of foreign arbitration awards," Cubic Defense Systems, 665 F.3d at 1098, because "[t]he goal of the [New York] Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974).

Ecuador's second contention – that enforcing the Award would flout its sovereignty – is similarly unavailing. Ecuador argues that enforcing the Award would sanction the forcible removal of pending litigation from Ecuadorian courts, something it suggests the U.S. would never tolerate. Such a characterization is erroneous.

Ecuador and the U.S. willingly entered into the BIT, in which they agreed to "provide effective means of asserting claims and enforcing rights with respect to investment, investment agreements, and investment authorizations." U.S.-Ecuador BIT, art. II(7). The present dispute found its way to arbitration because Chevron alleged a breach of this clause – namely, that Ecuador had failed to provide "effective means of . . . enforcing rights" in its court system by allowing Chevron's claims to languish there for fifteen years.

18

In such an instance, the BIT explicitly states that disputes "arising out of . . . an alleged breach of any right conferred or created by this treaty" may be resolved through "courts or administrative tribunals" and through "binding arbitration." See id., art. VI(1-3). The BIT leaves the choice of dispute-resolution method up to the national or company bringing the claim, and it provides that such awards shall be enforceable under the New York Convention. Id. In this sense, the BIT's provision for the arbitration of claims that a signatory has breached its treaty obligations operates as a backstop against the failure of the court systems of either of the signatory nations, and it has played that role appropriately here.

Indeed, it strains credulity to argue that both these sovereign nations would have agreed to such a choice of dispute-resolution processes if they had anticipated it would lead to results that would "violate . . . [their] most basic notions of morality and justice." Parsons, 508 F.2d at 974. Given that the Court has found there was a valid agreement to arbitrate between the parties formed under the BIT, the Court cannot now say that enforcing it through the precise means contemplated by the treaty would contravene the strong public policy of the United States. As a result, confirmation may not be denied on this basis.

To the extent Ecuador also claims that the Tribunal's remedy was improper, such remedy clearly does not violate U.S. public policy. In this case, the Tribunal found that Ecuador had breached its obligations under the BIT, and it concluded that the appropriate damage measure for "an international wrong is . . . the comparison of the victim's actual situation to that which would have prevailed had the illegal acts not been committed." See Partial Award, ¶ 374. Applying this principle to Ecuador's breach of the BIT, it found that because

> the Claimants' alleged primary "loss" in this case is the chance for
> a judgment by the Ecuadorian courts, the Tribunal must ask itself
> how a competent, fair, and impartial Ecuadorian court would have
> resolved [Chevron]'s claims. The Tribunal must step into the

19

shoes and mindset of an Ecuadorian judge and come to a conclusion about what the proper outcome of the cases should have been.

Id., ¶ 375.

The Court offers no opinion on whether the Tribunal's proposed remedy was erroneous as an interpretation of the appropriate damages measure in an international arbitration, but even if it were, "a mere error of law would not . . . be sufficient grounds to refuse recognition of the award." National Oil Corp. v. Libyan Sun Oil Co., 733 F. Supp. 800, 819 n.32 (D. Del. 1990); see also Karaha Bodas Co., 364 F.3d at 306 ("Erroneous legal reasoning or misapplication of law is generally not a violation of public policy within the meaning of the New York Convention."); Brandeis Intsel Limited v. Calabrian Chemicals Corp., 656 F. Supp. 160, 165 (S.D.N.Y. 1987) ("'[M]anifest disregard' of law, whatever the phrase may mean, does not rise to the level of contravening 'public policy,' as that phrase is used in Article V of the Convention.") (emphasis in original). Based on the limited nature of the Court's review here, it could not conclude that the Tribunal's proposed remedy was so egregious that it violated U.S. public policy and should be vacated.

Finding that Ecuador has not carried its burden to show that any of the bases for denying confirmation in the New York Convention applies to the Award here, the Court must grant Chevron's Petition and confirm the Award.

### C. Ecuador's Request for a Stay

Finally, Ecuador argues that "the Court should defer a final decision on the merits of Chevron's petition pending resolution of the ongoing set-aside proceedings in the Hague," as

20

permitted by Article VI of the New York Convention.  See Resp. Opp. to Pet. at 26.  Under the

Convention, district courts do have discretion to stay proceedings where "a parallel proceeding is

ongoing in the originating country and there is a possibility that the award will be set aside."

Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 317 (2d Cir. 1998).  Noting that

"the adjournment of enforcement proceedings impedes the goals of arbitration – the expeditious

resolution of disputes and the avoidance of protracted and expensive litigation," the Europcar

court found that "a stay of confirmation should not be lightly granted," and it identified a number

of factors district courts should consider in evaluating a request for a stay of proceedings.  Id. at

317.  These factors include:

> (1) The general objectives of arbitration . . .;
> (2) The status of the foreign proceedings and the estimated time
>     for those proceedings to be resolved;
> (3) Whether the award sought to be enforced will receive greater
>     scrutiny in the foreign proceedings under a less deferential
>     standard of review;
> (4) The characteristics of the foreign proceedings including (i)
>     whether they were brought . . . to set the award aside (which
>     would tend to weigh in favor of enforcement) . . . and (iv)
>     whether they were initiated under circumstances indicating an
>     intent to hinder or delay resolution of the dispute;
> (5) A balance of the possible hardships to the parties . . .; and
> (6) Any other circumstance that could tend to shift the balance in
>     favor of or against adjournment . . . .

Id. at 317-318.  "Because the primary goal of the Convention is to facilitate the recognition and

enforcement of arbitral awards, the first and second factors on the list should weigh more heavily

in the district court's determination."  Id. at 318.  Notably, Ecuador's initial request for a stay

makes no mention of the Europcar factors, and its Second Opposition makes only passing

reference to them.  The Court, finding that the balance of factors weighs against staying the

proceedings, will deny Ecuador's request.

The first factor, the general objectives of arbitration, weighs strongly in favor of confirmation. The BIT, the UNCITRAL Rules, and the New York Convention all require immediate satisfaction of arbitral awards. Chevron submitted its Notice of Arbitration in this matter more than six years ago, a delay that surely does not constitute an "expeditious resolution" of the dispute, which originated in the early 1990s. See G.E. Transport, 693 F. Supp. 2d at 139 (finding that four-year delay "plainly weigh[ed] in favor of confirmation rather than adjournment").

Likewise, the second factor, the status of the foreign proceedings, weighs in favor of immediate confirmation: although the Dutch proceeding is ongoing, the District Court of the Hague issued a decision denying Ecuador's petition to set the award aside more than a year ago, and the appeal will likely not be resolved until late 2013 or early 2014. See Pet., ¶ 34; Kehoe Decl., Exh. 6 (Certified Judgment of the District Court of the Hague).

The third factor, whether the award will receive greater scrutiny in foreign proceedings, is a closer case. According to Chevron's expert, Jacob M.K.P. Cornegoor, who represents Chevron in the Dutch proceeding, "[T]he [Dutch] District Court reviewed the question whether a valid arbitration agreement was formed *de novo*," but reviewed the question of whether the dispute concerned an investment validly covered by the BIT as "one for arbitrators to consider and their answer should be reviewed under a more restrictive standard by the court." Declaration of Jacob M.K.P. Cornegoor, ¶ 4; Certified Judgment, ¶¶ 4.10-4.11. This standard is not so much more exacting than the one applied here that it weighs strongly against confirmation, and, indeed, the fact that the Dutch District Court has already denied the motion to set aside suggests that to the extent the standard is any more searching, it has not helped Ecuador in its attempt to resist confirmation.

The fourth factor does not carry much force either way. Although the parties dispute whether the vacatur proceedings are an attempt to "hinder or delay resolution of the dispute," the Court cannot say that they are so obviously either legitimate or vexatious that this factor should sway its analysis here. The fact that the proceedings were initiated to vacate the Award, rather than confirm it, however, does weigh against a stay.

The fifth factor, the balance of hardships, also counsels in favor of immediate confirmation. As Chevron notes, this dispute is more than twenty years old, and the arbitration itself began more than six years ago. Although Chevron will be entitled to prejudgment interest, which would continue to accrue in the event of a stay, that is not enough to offset its continued inability to obtain enforcement of its award. After such an extensive delay, the balance of hardships – and, indeed, the interests of justice – strongly favor immediate confirmation.

Neither side presents any other significant circumstance that should be considered as an additional factor. Because the balance of the Europcar factors greatly supports immediate confirmation, the Court will deny Ecuador's request for a stay.

## III. Conclusion

For the aforementioned reasons, the Court will grant Chevron's Petition and order confirmation of the Award. A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 6, 2013

23

# Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CHEVRON CORPORATION and TEXACO PETROLEUM COMPANY,** | |
| **Petitioners,** | |
| **v.** | Civil Action No.  12-1247 (JEB) |
| **REPUBLIC OF ECUADOR,** | |
| **Respondent.** | |

## ORDER

As set forth in the accompanying Memorandum Opinion, the Court ORDERS that:

1. Petitioner's Motion to Confirm is GRANTED;

2. The Award of the Arbitral Tribunal is CONFIRMED;

3. Judgment for Chevron is ENTERED in the amount of $96,355,369.17, plus

   compound interest calculated at the New York Prime Rate (annual) from August

   31, 2011, until the date of this ORDER; and

4. The case is DISMISSED.

SO ORDERED.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  June 6, 2013

1

CHEVRON CORPORATION and
TEXACO PETROLEUM COMPANY,

      Petitioners,

        v.                         Civil Action No. 12-1247 (JEB)

REPUBLIC OF ECUADOR,

      Respondent.

## MEMORANDUM OPINION

Petitioners Chevron Corporation and Texaco Petroleum Company filed this action to confirm an award issued by an international tribunal under 9 U.S.C. § 207 and the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards, better known as the New York Convention. Respondent Republic of Ecuador seeks to deny such confirmation on several bases. First, Ecuador argues that this Court lacks subject-matter jurisdiction because the case does not meet the requirements of the arbitration exception to the Foreign Sovereign Immunities Act. Second, it contends that confirmation must be denied under the New York Convention because the Award was beyond the scope of the submission to arbitration and is contrary to United States public policy. Finally, it maintains that this Court should, at a minimum, stay proceedings in this matter while Ecuador attempts to have the Award set aside by courts in the Netherlands, where the Award was rendered. Disagreeing on all fronts, the Court will deny Ecuador's request and grant Chevron's Petition to Confirm the Award.

## I. Background

According to the Petition, Chevron and Texaco (together "Chevron") entered into a contract with Ecuador in 1973, permitting Chevron to exploit oil reserves in Ecuador's Amazon region, on the condition that Chevron provide a percentage of its crude-oil production at a reduced price to meet Ecuadorian domestic-consumption needs. See Pet., ¶¶ 11-12. The agreement was amended in 1977 and expired in June 1992. Id., ¶¶ 11, 16. As Chevron began winding up its work in Ecuador in 1991, it filed seven breach-of-contract cases there against the Ecuadorian government, seeking over $553 million in damages for various breaches of the 1973 and 1977 agreements. Id., ¶ 17. These disputes largely concerned allegations that Ecuador had overstated its domestic oil-consumption needs, and appropriated more crude oil than it was entitled to acquire at the reduced price. Id. ¶ 17. The lawsuits remained pending in Ecuadorian courts until being incorporated into the arbitration at issue in this case in 2006. Id., ¶ 21.

Meanwhile, in 1997, the U.S.-Ecuador Bilateral Investment Treaty (BIT) entered into force. Id., ¶ 18; Treaty Between the United States of America and the Republic of Ecuador Concerning the Encouragement and Reciprocal Protection of Investments, U.S.-Ecuador, Aug. 27, 1993, S. Treaty Doc. No. 103-15. The BIT generally provides certain legal protections to American and Ecuadorian investors when they engage in foreign direct investment in the reciprocal country. It specifically provides, *inter alia*, that disputes against one of the parties arising out of such investments may be resolved by resort to binding arbitration upon request of a company or national of the other party. Id., art. VI(3). After more than a decade had elapsed without a determination of its claims pending in the Ecuadorian courts, Chevron filed a Notice of Arbitration in 2006 alleging that Ecuador had breached the BIT by allowing its claims to languish in those courts without a resolution. See Pet., ¶¶ 21, 24-25.

2

A three-member arbitral Tribunal based at The Hague conducted several rounds of hearings concerning both its jurisdiction to hear the case and the merits of the dispute.  Id., ¶¶ 10, 22.  The Tribunal issued an Interim Award in December 2008 finding it had jurisdiction to hear the case, see Declaration of Edward G. Kehoe, Exh. 3 (Interim Award), a Partial Award on the Merits in March 2010 finding that the Ecuadorian courts' undue delay constituted a breach of the BIT, see id., Exh. 4 (Partial Award on the Merits), and a Final Award in August 2011 concerning damages.  See id., Exh. 5 (Final Award on the Merits).  Ecuador petitioned the District Court of The Hague to set aside the Award in July 2010, but the court denied that request in May 2012.  See Pet., ¶ 34.  Ecuador subsequently appealed the Dutch District Court's judgment, and its appeal remains pending.  See Resp. Opp. to Pet. (ECF No. 18) at 3, 9.

Chevron now seeks an order confirming the Final Award under the New York Convention.  Ecuador, not surprisingly, objects.

## II.    Analysis

Ecuador raises three arguments in an effort to derail confirmation: the Court lacks subject-matter jurisdiction under the Foreign Sovereign Immunities Act, confirmation should be denied under the New York Convention, and a stay pending appeal in the Netherlands is appropriate.  The Court addresses each in turn.

### A.  Foreign Sovereign Immunities Act

Ecuador first argues that the Foreign Sovereign Immunities Act, 28 U.S.C. § 1604, deprives the Court of subject-matter jurisdiction.  See Resp. Opp. to Pet. at 10.  The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts."  Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989).  Under the statute, "a foreign state is presumptively immune from the jurisdiction of the United States courts[] unless a specified

3

exception applies." <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 355 (1993). Because "subject matter

jurisdiction in any such action depends on the existence of one of the specified exceptions . . .

[a]t the threshold of every action in a District Court against a foreign state . . . the court must

satisfy itself that one of the exceptions applies." <u>Verlinden B.V. v. Central Bank of Nigeria</u>, 461

U.S. 480, 493-94 (1983). Notably, "the defendant bears the burden of proving that the plaintiff's

allegations do not bring its case within a statutory exception to immunity." <u>Phoenix Consulting,</u>

<u>Inc. v. Republic of Angola</u>, 216 F.3d 36, 40 (D.C. Cir. 2000) (citing <u>Transamerican S.S. Corp. v.</u>

<u>Somali Democratic Republic</u>, 767 F.2d 998, 1002 (D.C. Cir. 1985)).

      The FSIA provides an exception to foreign sovereign immunity for actions to confirm

certain arbitration awards. <u>See</u> 28 U.S.C. § 1605(a)(6). Specifically, foreign sovereigns are not

immune from suits

> in which the action is brought[] either to enforce an agreement
> made by the foreign state with or for the benefit of a private party
> to submit to arbitration all or any differences which have arisen or
> which may arise between the parties with respect to a defined legal
> relationship . . . or <u>to confirm an award made pursuant to such an</u>
> <u>agreement to arbitrate, if . . . the agreement or award is or may be</u>
> <u>governed by a treaty or other international agreement</u> in force for
> the United States calling for the recognition and enforcement of
> arbitral awards.

<u>Id.</u> (emphasis added). Chevron asserts that its Petition falls under this exception because the

Final Award was made pursuant to the BIT and is governed by the 1958 Convention on the

Recognition and Enforcement of Foreign Arbitral Awards, also known as the New York

Convention, implemented at 9 U.S.C. §§ 201 *et seq.* <u>See</u> Pet., ¶¶ 4-5. This is correct.

      First, the Award's own language indicates it was rendered pursuant to the BIT, an

agreement that provides for arbitration. <u>See</u> Interim Award at 1, 39 (referring to the Award as

4

"under the BIT" and describing the BIT as one of the "principal relevant legal provisions" in the dispute).

Second, the Award is clearly governed by the New York Convention, which controls "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought."  Convention on the Recognition and Enforcement of Foreign Arbitral Awards, opened for signature June 10, 1958, art. I.1, 21 U.S.T. 2517.  Awards are enforceable in the courts of any signatory so long as "'the place of the award . . . is in the territory of a party to the Convention.'"  Creighton Ltd. v. Government of the State of Qatar, 181 F.3d 118, 121 (D.C. Cir. 1999) (quoting Restatement (Third) of Foreign Relations Law § 471 cmt. b (1987)).  Because the arbitration in this matter was conducted at The Hague and the Netherlands is a party to the New York Convention, the Final Award here is governed by the Convention.  See Pet., ¶ 10; U.S. Dept. of State, Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2007, § 2 at 12, available at http://www.state.gov/documents/organization/89668.pdf.

Under the law of this Circuit, moreover, the arbitration exception in § 1605(a)(6) "by its terms" applies to actions to confirm arbitration awards under the New York Convention.  Creighton, 181 F.3d at 123.  "Indeed, it has been said with authority that the New York Convention 'is exactly the sort of treaty Congress intended to include in the arbitration exception.'"  Id. at 123-24 (quoting Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1018 (2d Cir. 1993)).  The Court thus finds that Chevron has satisfied the requirements of the FSIA's arbitration exception.

Ecuador nonetheless raises a novel argument in contesting the applicability of the exception here.  It contends that it never consented to arbitrate the underlying dispute in this

matter, meaning the award was not rendered "pursuant to . . . an agreement to arbitrate," and that the Court must satisfy itself of the arbitrability of the underlying dispute before finding subject-matter jurisdiction over this enforcement proceeding.  <u>See</u> Resp. Opp. to Pet. at 10-11 (citing 28 U.S.C. § 1605(a)(6)).  Ecuador, however, points to no authority – nor can the Court identify any – suggesting that the Court must conduct such an independent, *de novo* determination of the arbitrability of a dispute to satisfy the FSIA's arbitration exception.

Such an argument appears to be an attempt by Ecuador to get two bites at the apple of the merits of its dispute with Chevron, by seeking to have this Court separately determine the arbitrability of the underlying dispute under both the FSIA and the New York Convention.  The inquiry Ecuador suggests runs counter to the clear teaching of this Circuit on the purpose and role of the FSIA.  The FSIA is a jurisdictional statute that "'speak[s] to the power of the court rather than to the rights and obligations of the parties.'"  <u>Creighton</u>, 181 F.3d at 124 (quoting <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244, 274 (1994)).  Likewise, "§ 1605(a)(6) does not affect the contractual right of the parties to arbitration but only the tribunal that may hear a dispute concerning enforcement of an arbitral award."  <u>Id.</u> (citing <u>McGee v. International Life Ins. Co.</u>, 355 U.S. 220, 224 (1957)).  Inquiring into the merits of the enforcement dispute – that is, the arbitrability of the underlying claims – would involve an inquiry into the "contractual rights of the parties to arbitration" and would thus be beyond the reach of the FSIA's cabined jurisdictional inquiry.

In contrast to the unprecedented merits-based review Ecuador seeks, the Court's approach here is consistent with those of numerous other federal courts, which have engaged in only these two jurisdictional inquiries – namely, whether the award was made pursuant to an appropriate arbitration agreement with a foreign state and whether the award "is or may be"

6

governed by a relevant recognition treaty. See, e.g., Blue Ridge Investments, LLC v. Republic of Argentina, 902 F. Supp. 2d 367, 375 (S.D.N.Y. 2012) ("Here, Blue Ridge instituted the instant action 'to confirm an award made pursuant to [Argentina's] agreement to arbitrate.' The Award is governed by the ICSID Convention, 'a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards. Argentina and the United States are both signatories to the Convention. . . . Accordingly, this Court has subject matter jurisdiction under . . . Section 1605(a)(6).") (alterations in original); Continental Casualty Co. v. Argentine Republic, 893 F. Supp. 2d 747, 751 n.11 (E.D. Va. 2012) (collecting cases); In the Matter of the Arbitration Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 494-95 (2d Cir. 2002) (finding jurisdiction under the FSIA in proceeding to confirm arbitration award under the New York Convention); G.E. Transp. v. Republic of Albania, 693 F. Supp. 2d 132, 136 (D.D.C. 2010) (same); Agrocomplect, AD v. Republic of Iraq, 524 F. Supp. 2d 16, 33-34 (D.D.C. 2007) (denying jurisdiction because Iraq, where arbitration took place, "was not a signatory to the New York Convention or (to the best of the Court's knowledge) any other 'treaty or international agreement in force for the United States calling for the recognition and enforcement of arbitral awards' when it entered into the contract with the plaintiff") (quoting 28 U.S.C. § 1605(a)(6)).

In any event, the Court's analysis in Section III.B, *infra*, affirms – albeit under a somewhat deferential standard of review – that Ecuador did consent to arbitration. Respondent's FSIA argument would thus be unlikely to prevail even if reviewed on its merits. Indeed, in any dispute where a respondent argues under the New York Convention that the award was beyond the arbitrator's power, such merits inquiry will always occur. See New York Convention, art. V(1)(c) (Court may deny confirmation where award beyond scope of submission to arbitration).

7

There is thus no prejudice to either party that would be incurred by a Court's not engaging in the same analysis twice.

      B.  <u>New York Convention</u>

      The Federal Arbitration Act, 9 U.S.C. §§ 201-208, codifies the New York Convention. Pursuant to the Convention, a district court "shall confirm the [arbitral] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. "Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution' recognized by the Supreme Court . . . the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards." <u>Belize Social Development Ltd. v. Government of Belize</u>, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 631 (1985)). Courts "may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention." <u>TermoRio S.A. E.S.P. v. Electranta S.P.</u>, 487 F.3d 928, 935 (D.C. Cir. 2007) (quoting <u>Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.</u>, 126 F.3d 15, 23 (2d Cir. 1997)) (quotation marks omitted); <u>see also</u> <u>Int'l Trading & Indus. Inv. Co. v. Dyncorp Aerospace Tech.</u>, 763 F. Supp. 2d 12, 19 (D.D.C. 2011) (collecting cases). Because "the New York Convention provides only several narrow circumstances when a court may deny confirmation of an arbitral award, confirmation proceedings are generally summary in nature." <u>Int'l Trading</u>, 763 F. Supp. 2d at 20 (citing <u>Zeiler v. Deitsch</u>, 500 F.3d 157, 167 (2d Cir. 2007)). The party resisting confirmation bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies. <u>See</u> New York Convention, art. V; <u>Imperial Ethiopian Gov't v. Baruch-Foster Corp.</u>, 535 F.2d 334, 336 (5th Cir. 1976); <u>see also</u> <u>Ottley v. Schwartzberg</u>, 819

8

F.2d 373, 376 (2d Cir. 1987) ("[T]he showing required to avoid summary confirmation is high.").

In contending that the Award here should not be enforced, Ecuador relies on two of the grounds for denying confirmation set forth in Article V. See Resp. Opp. to Pet. at 23-25. First, It invokes Article V(1)(c), which allows a court to deny confirmation where "[t]he award deals with a difference . . . not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." Second, Ecuador argues that confirmation may be denied under Article V(2)(b), which allows for denial of confirmation where "the recognition or enforcement of the award would be contrary to the public policy" of the country where confirmation is sought. Neither ground is availing.

### 1. *Article V(1)(c): Arbitrability*

Ecuador first asserts that confirmation may be denied under Article V(1)(c) because it "never agreed – with the United States or with Chevron – to arbitrate the claims in the pending litigation or Chevron's Treaty claim of undue delay concerning that litigation." See Resp. Opp. to Pet. at 9. It contends that since the Tribunal's decision on the arbitrability of the underlying dispute was incorrect, the Final Award was "beyond the scope of the submission to arbitration." See New York Convention, art. V(1)(c). To reach such a conclusion, Ecuador suggests that this Court must engage in an "independent determination" of the Tribunal's jurisdiction to resolve the underlying dispute. See Resp. Reply and Opp. at 5-8. Chevron disagrees, claiming instead that because the parties "clearly and unmistakably" agreed that the Tribunal should decide the arbitrability of the dispute, this Court's review of that decision should be highly deferential, a standard the Tribunal's reasoned decision entirely satisfies. See Pet. Opp. and Mot. (ECF No. 20) at 15. Chevron has the better of this debate.

9

43

Ecuador maintains that this Court must conduct a *de novo* review of the Tribunal's

decision on jurisdiction because, in the ordinary case, "the question of arbitrability . . . is

undeniably an issue for judicial determination." AT&T Tech., Inc. v. Commc'n Workers of

Am., 475 U.S. 643, 649 (1986); see also Resp. Opp. to Pet. at 12 (citing Granite Rock Co. v. Int'l

Bhd. of Teamsters, 130 S. Ct. 2847, 2855 (2010), and First Options of Chicago, Inc. v. Kaplan,

514 U.S. 938, 943 (1995)).  Ecuador, however, mischaracterizes the holdings of these cases,

none of which provides that arbitrability is an issue for judicial determination in all

circumstances.  For example, while the AT&T Technologies court noted that, ordinarily,

arbitrability is an issue for judicial determination, it held that where "the parties clearly and

unmistakably provide otherwise" – *e.g.*, where they have submitted the arbitrability of the

dispute to the arbitrators – the arbitrator determines the arbitrability of the dispute in the first

instance.  See 475 U.S. at 649; see also, e.g., First Options, 514 U.S. at 943 ("We agree with

First Options, therefore, that a court must defer to an arbitrator's arbitrability decision when the

parties submitted that matter to arbitration.").  Granite Rock, by contrast, concerned a case where

there was no dispute about who should determine arbitrability.  See 130 S. Ct. at 2856 (noting

that on those facts, "[t]he parties agree[d] that it was proper for the District Court to decide

whether their ratification dispute was arbitrable").

    In cases where the parties have clearly and unmistakably delegated the question of

arbitrability to the arbitrator, a court may review that arbitrability decision, but it "should give

considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow

circumstances."  First Options, 514 U.S. at 943.  Indeed, at least one federal circuit has explicitly

rejected the position Ecuador takes here, holding that where the parties "clearly and

unmistakably agreed to arbitrate issues of arbitrability," the party resisting confirmation of the

10

award "is not entitled to an independent judicial redetermination of that same question."
Schneider v. Kingdom of Thailand, 688 F.3d 68, 74 (2d Cir. 2012). To the extent that the parties here have "clearly and unmistakably" agreed to arbitrate arbitrability, then, this Court must give substantial deference to that decision. In a confirmation proceeding where arbitrability has been clearly and unmistakably delegated to the arbitrator, "the [New York] Convention . . . does not sanction [a Court's] second-guessing the arbitrator's construction of the parties' agreement." Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier (RATKA), 508 F.2d 969, 977 (2d Cir. 1974).

In deciding this question, the Court first considers whether an agreement to arbitrate exists at all, then analyzes whether such agreement intended the Tribunal to determine questions of arbitrability, and ends with a review of the Tribunal's decision on that issue in this case.

a. Existence of an Agreement to Arbitrate

To begin, Chevron asserts that the "plain language" of the U.S.-Ecuador BIT demonstrates Ecuador's consent to arbitrate this dispute. See Pet. Opp. and Mot. at 14. In its view, Article VI of the BIT constitutes "a standing offer to arbitrate any 'investment dispute' brought by a U.S. 'national or company.'" See id. at 14-15 (citing U.S.-Ecuador BIT, art. VI § 4(b)). This position is bolstered by two recent Second Circuit decisions interpreting bilateral investment treaties as creating written agreements to arbitrate for purposes of the New York Convention on facts similar to these. In a case involving both the U.S.-Ecuador BIT and a dispute between our same parties Chevron and Ecuador, the Second Circuit explained:

> The BIT provides that "an 'agreement in writing' for purposes of Article II of the . . . New York Convention" is created when a foreign company gives notice in writing to a BIT signatory and submits an investment dispute between the parties to binding arbitration in accordance with Article VI of the Treaty. All that is necessary to form an agreement to arbitrate is for one party to be a

11

> BIT signatory and the other to consent to arbitration of an
> investment dispute in accordance with the Treaty's terms. In
> effect, Ecuador's accession to the Treaty constitutes a standing
> offer to arbitrate disputes covered by the Treaty; a foreign
> investor's written demand for arbitration completes the "agreement
> in writing" to submit the dispute to arbitration.

Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 392-93 (2d Cir. 2011) (emphasis added)

(internal citations omitted). Likewise, when interpreting the Germany-Thailand BIT, the same

court held that "[t]he existence of an arbitration agreement [between the investor and Thailand]

is beyond dispute. Thailand, 'by signing the [treaty], and [the investor] by consenting to

arbitration, have created a separate binding agreement to arbitrate.'" Schneider, 688 F.3d at 71-

72 (quoting Chevron, 638 F.3d at 392). Although these decisions are not binding on this Court,

given the Second Circuit's sound reasoning regarding directly comparable facts, the Court sees

no reason to deviate from this approach here. This is, furthermore, a point Ecuador does not

truly contest.

Because the BIT constitutes Ecuador's "standing offer" to arbitrate, all Chevron must

show is that it was a U.S. "company or national" that submitted an "investment dispute" in order

for the Court to find it had a binding arbitration agreement with Ecuador. No one disputes that

Chevron is a U.S. company or national. The BIT defines an "investment dispute" to include "an

alleged breach of any right conferred or created by this Treaty with respect to an investment."

See U.S. Ecuador BIT, art. VI § 1. Because Chevron alleged that "Ecuador breached Article

II(7) of the BIT through the undue delay of the Ecuadorian courts" in deciding Chevron's

breach-of-contract cases regarding its initial investment in Ecuador, see Pet., ¶ 27, it properly

requested arbitration of an "alleged breach of [a] right conferred by [the BIT] with respect to an

investment." See Section III.B.1.c, *infra* (discussing definition of investment). The Court thus

finds it had a valid agreement to arbitrate under the BIT.

### b. Who Determines Arbitrability?

Having determined that the parties here entered into a valid agreement to arbitrate, the Court must now inquire whether that agreement "clearly and unmistakably" shows that they intended the Tribunal to decide questions of arbitrability. In this case, the U.S.-Ecuador BIT, which forms the basis of the agreement to arbitrate, provides that arbitration may be conducted "in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law (UNCITRAL)." See U.S.-Ecuador BIT, art. VI § 3(a)(iii). Article 21 of the UNCITRAL rules requires that the arbitral tribunal "shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the . . . arbitration agreement." UNCITRAL Arbitration Rules, art. 21, ¶ 1, G.A. Res. 31/98, U.N. Doc. A/RES/31/98 (Dec. 15, 1976). In this Circuit, clear and binding precedent dictates that in the context of a bilateral investment treaty, "incorporation of the UNCITRAL Rules provides clear[] and unmistakabl[e] evidence[] that the parties intended for the arbitrator to decide questions of arbitrability." Republic of Argentina v. BG Group PLC, 665 F.3d 1363, 1371 (D.C. Cir. 2012) (alterations in original) (internal quotation marks omitted). Indeed, the D.C. Circuit is not alone in this regard; the Second and Ninth Circuits have both reached the same conclusion. See Chevron, 638 F.3d at 394; Wal-Mart Stores, Inc. v. PT Multipolar Corp., No. 98-16952, 1999 WL 1079625, at *2 (9th Cir. Nov. 30, 1999). And, indeed, Ecuador wisely yields to the unequivocal authority on this issue. See Resp. Reply and Opp. (ECF No. 26) at 6. The Court, accordingly, finds that the parties here clearly and unmistakably agreed to have the arbitrator resolve issues of arbitrability.

### c. Deferential Review of Tribunal's Decision

Having so found, the Court may now engage in only deferential review of the Tribunal's decision, granting "considerable leeway to the arbitrator." First Options, 514 U.S. at 943. At the outset, it is worth noting that the "beyond the scope" defense to confirmation "should be construed narrowly" and that the party resisting confirmation on such basis "must . . . overcome a powerful presumption that the arbitral body acted within its powers." Parsons, 508 F.2d at 976. Indeed, such limited review is consistent with "the basic purposes of arbitration: to resolve disputes speedily and to avoid the expense and delay of extended court proceedings." Fed. Commerce & Nav. Co. v. Kanematsu-Gosho, Ltd., 457 F.2d 387, 389 (2d Cir. 1972); see also Rich v. Spartis, 516 F.3d 75, 81 (2d Cir. 2008) (arbitration awards subject to very limited review "in order to avoid undermining the twin goals of arbitration").

Unfortunately, the precise nature of the limited review contemplated by First Options is not clear from the cases that follow. See Schneider, 688 F.3d at 74 (expressing "no opinion on the precise standard for [deferential] review"). Ecuador, for example, contends that "the court should consider the arbitrators' reasoning [and i]f it does not hold up under scrutiny, it should be rejected," see Resp. Reply and Opp. at 8, but it offers no authority for this position.

The Court need not determine exactly what standard of deference to employ, as even under a very mildly deferential standard, the Tribunal's decision appears well reasoned and comprehensive. In no way is it so erroneous, unjust, or unclear that this Court would be empowered to set it aside.

The Tribunal here consisted of three learned arbitrators, one chosen by Chevron, one chosen by Ecuador, and one chosen by the first two arbitrators with the consent of the parties. See Interim Award at 13. No one contends that the arbitrators were biased, inexperienced, or otherwise inadequate. The Tribunal held eleven days of hearings, four of which were solely

14

devoted to jurisdiction.  See id. at 25-26.  It ultimately produced a 140-page opinion concerning arbitrability alone and addressing eight potential jurisdictional issues.  See id. at 63-138. Ecuador thus cannot claim that the Award should be set aside for the Tribunal's failure to thoroughly engage with the issues or the parties' arguments.

Looking beyond the comprehensiveness of the Tribunal's work to its reasoning, the Court again finds no reason for reversal.  At arbitration, Ecuador contended that the underlying breach-of-contract and unreasonable-delay disputes were nonarbitrable because they were not covered by the U.S.-Ecuador BIT, arguing variously that the BIT did not cover investments that had "expired" prior to its entry into force and that, in any case, the surviving breach-of-contract claims could not constitute "investments" under the Treaty.  See id., ¶¶ 59, 79.  The Tribunal disagreed.  It noted that the BIT defines "investments" to include "a claim to money or a claim to performance having economic value, and associated with an investment."  Id., ¶ 179.  The Tribunal "agreed with [Chevron] that . . . [the underlying lawsuits] concern the liquidation and settlement of claims relating to [Chevron's initial investment in Ecuador] and, therefore, form part of that investment."  Id., ¶ 180.  It further observed that treaty language "giv[ing] a further non-exhaustive list of forms that an investment may take" and "provid[ing] that '[a]ny alteration of the form in which assets are invested or reinvested shall not affect their character as [an] investment'" bolstered its conclusion that "once an investment is established, it continues to exist and be protected [by the BIT] until its ultimate 'disposal' has been completed – that is, until it has been wound up."  Id., ¶¶ 181, 183.  It then concluded that Chevron's "investments have not ceased to exist: their lawsuits continued their original investment through the entry into force of the BIT and to the date of commencement of this arbitration."  Id., ¶ 184.

15

The Court can find nothing objectionable about this conclusion, which is based on the plain text of the BIT. Although the Tribunal discusses other jurisdictional arguments throughout the rest of the Interim Award, this analysis is alone sufficient to survive even the more searching form of review Ecuador contends is applicable here. Indeed, if the Court were asked the same question in the first instance, such plain-meaning analysis would likely end the matter, as it does in the interpretation of contracts, judgments, and statutes. See, e.g., Travelers Indem. Co. v. Bailey, 557 U.S. 137, 150 (2009) ("[W]here the plain terms of a court order unambiguously apply . . . they are entitled to their effect."); Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) ("[W]hen the words of a statute are unambiguous . . . this first canon is also the last: 'judicial inquiry is complete.'"); In re Fitzgerald Marine & Repair, Inc., 619 F.3d 851, 859 (8th Cir. 2010) ("Where the written instrument is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe [it accordingly].") (quotation and citations omitted).

Because the Treaty plainly states that an "investment" includes "a claim to money . . . associated with an investment" and dictates that "an investment . . . continues to exist . . . until it has been wound up," the Tribunal's reasoning that Chevron's breach-of-contract lawsuits were unexpired "investments" for purposes of the BIT more than "holds up under scrutiny." As the Tribunal's arbitrability decision survives the deferential review required in this circumstance, the Court cannot find that the Final Award is "beyond the scope" of the submission to arbitration and will not deny confirmation on this basis.

## 2. *Article V(2): Public Policy*

Ecuador also argues that confirmation must be denied because the award contravenes the public policy of the United States. See Resp. Opp. to Pet. at 24-25. The public-policy exception

under the New York Convention is construed extremely narrowly and applied "only where enforcement would violate the forum state's most basic notions of morality and justice." Parsons, 508 F.2d at 974 (citing Restatement (Second) of Conflict of Laws § 117, cmt. c (1971)); see also Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc., 665 F.3d 1091, 1097 (9th Cir. 2011); TermoRio S.A. E.S.P., 487 F.3d at 938; Admart AG v. Stephen & Mary Birch Found., Inc., 457 F.3d 302, 308 (3d Cir. 2006); Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 306 (5th Cir. 2004); Slaney v. Int'l Amateur Athletic Fed'n, 244 F.3d 580, 593 (7th Cir. 2001); M&C Corp. v. Erwin Behr GmbH & Co., KG, 87 F.3d 844, 851 n.2 (6th Cir. 1996). The "provision was not meant to enshrine the vagaries of international politics under the rubric of 'public policy,'" and it does not provide that awards that might contravene U.S. interests may be resisted on such grounds. Parsons, 508 F.2d at 974. Likewise, "[a]lthough this defense is frequently raised, it 'has rarely been successful.'" Cubic Defense Systems, 665 F.3d at 1097 (quoting Andrew M. Campbell, Annotation, Refusal to Enforce Foreign Arbitration Awards on Public Policy Grounds, 144 A.L.R. Fed. 481 (1998 & supp.)).

Ecuador points to no such "basic notion of morality and justice" that would be offended by the enforcement of the Award here; in fact, its public-policy argument is primarily a rehashing of its position that the Award was beyond the scope of the submission to arbitration. It also contends that enforcement would violate "strong public policies respecting foreign sovereignty and the autonomy of ongoing judicial proceedings." See Resp. Reply and Opp. at 16. Neither argument meets the extraordinarily high threshold required by the public-policy defense.

17

As to Ecuador's first argument – that the Award was beyond the scope – both the Tribunal and this Court have separately found that Ecuador did consent to arbitrate this dispute. In fact, it could just as easily be argued that enforcing the Award here furthers the strong U.S. policy of "ensur[i]ng that private arbitration agreements are enforced according to their terms." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748 (2011) (citation and quotation marks omitted); New York Convention, art. II. Indeed, analysis of a proposed public-policy defense "begins with the strong public policy favoring confirmation of foreign arbitration awards," Cubic Defense Systems, 665 F.3d at 1098, because "[t]he goal of the [New York] Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974).

Ecuador's second contention – that enforcing the Award would flout its sovereignty – is similarly unavailing. Ecuador argues that enforcing the Award would sanction the forcible removal of pending litigation from Ecuadorian courts, something it suggests the U.S. would never tolerate. Such a characterization is erroneous.

Ecuador and the U.S. willingly entered into the BIT, in which they agreed to "provide effective means of asserting claims and enforcing rights with respect to investment, investment agreements, and investment authorizations." U.S.-Ecuador BIT, art. II(7). The present dispute found its way to arbitration because Chevron alleged a breach of this clause – namely, that Ecuador had failed to provide "effective means of . . . enforcing rights" in its court system by allowing Chevron's claims to languish there for fifteen years.

18

In such an instance, the BIT explicitly states that disputes "arising out of . . . an alleged breach of any right conferred or created by this treaty" may be resolved through "courts or administrative tribunals" and through "binding arbitration." See id., art. VI(1-3). The BIT leaves the choice of dispute-resolution method up to the national or company bringing the claim, and it provides that such awards shall be enforceable under the New York Convention. Id. In this sense, the BIT's provision for the arbitration of claims that a signatory has breached its treaty obligations operates as a backstop against the failure of the court systems of either of the signatory nations, and it has played that role appropriately here.

Indeed, it strains credulity to argue that both these sovereign nations would have agreed to such a choice of dispute-resolution processes if they had anticipated it would lead to results that would "violate . . . [their] most basic notions of morality and justice." Parsons, 508 F.2d at 974. Given that the Court has found there was a valid agreement to arbitrate between the parties formed under the BIT, the Court cannot now say that enforcing it through the precise means contemplated by the treaty would contravene the strong public policy of the United States. As a result, confirmation may not be denied on this basis.

To the extent Ecuador also claims that the Tribunal's remedy was improper, such remedy clearly does not violate U.S. public policy. In this case, the Tribunal found that Ecuador had breached its obligations under the BIT, and it concluded that the appropriate damage measure for "an international wrong is . . . the comparison of the victim's actual situation to that which would have prevailed had the illegal acts not been committed." See Partial Award, ¶ 374. Applying this principle to Ecuador's breach of the BIT, it found that because

> the Claimants' alleged primary "loss" in this case is the chance for
> a judgment by the Ecuadorian courts, the Tribunal must ask itself
> how a competent, fair, and impartial Ecuadorian court would have
> resolved [Chevron]'s claims. The Tribunal must step into the

19

shoes and mindset of an Ecuadorian judge and come to a
conclusion about what the proper outcome of the cases should have
been.

Id., ¶ 375.

The Court offers no opinion on whether the Tribunal's proposed remedy was erroneous

as an interpretation of the appropriate damages measure in an international arbitration, but even

if it were, "a mere error of law would not . . . be sufficient grounds to refuse recognition of the

award." National Oil Corp. v. Libyan Sun Oil Co., 733 F. Supp. 800, 819 n.32 (D. Del. 1990);

see also Karaha Bodas Co., 364 F.3d at 306 ("Erroneous legal reasoning or misapplication of law

is generally not a violation of public policy within the meaning of the New York Convention.");

Brandeis Intsel Limited v. Calabrian Chemicals Corp., 656 F. Supp. 160, 165 (S.D.N.Y. 1987)

("'[M]anifest disregard' of law, whatever the phrase may mean, does not rise to the level of

contravening 'public policy,' as that phrase is used in Article V of the Convention.") (emphasis

in original). Based on the limited nature of the Court's review here, it could not conclude that

the Tribunal's proposed remedy was so egregious that it violated U.S. public policy and should

be vacated.

Finding that Ecuador has not carried its burden to show that any of the bases for denying

confirmation in the New York Convention applies to the Award here, the Court must grant

Chevron's Petition and confirm the Award.

C.  Ecuador's Request for a Stay

Finally, Ecuador argues that "the Court should defer a final decision on the merits of

Chevron's petition pending resolution of the ongoing set-aside proceedings in the Hague," as

permitted by Article VI of the New York Convention.  <u>See</u> Resp. Opp. to Pet. at 26.  Under the

Convention, district courts do have discretion to stay proceedings where "a parallel proceeding is

ongoing in the originating country and there is a possibility that the award will be set aside."

<u>Europcar Italia, S.p.A. v. Maiellano Tours, Inc.</u>, 156 F.3d 310, 317 (2d Cir. 1998).  Noting that

"the adjournment of enforcement proceedings impedes the goals of arbitration – the expeditious

resolution of disputes and the avoidance of protracted and expensive litigation," the <u>Europcar</u>

court found that "a stay of confirmation should not be lightly granted," and it identified a number

of factors district courts should consider in evaluating a request for a stay of proceedings.  <u>Id.</u> at

317.  These factors include:

> (1) The general objectives of arbitration . . .;
> (2) The status of the foreign proceedings and the estimated time
>     for those proceedings to be resolved;
> (3) Whether the award sought to be enforced will receive greater
>     scrutiny in the foreign proceedings under a less deferential
>     standard of review;
> (4) The characteristics of the foreign proceedings including (i)
>     whether they were brought . . . to set the award aside (which
>     would tend to weigh in favor of enforcement) . . . and (iv)
>     whether they were initiated under circumstances indicating an
>     intent to hinder or delay resolution of the dispute;
> (5) A balance of the possible hardships to the parties . . .; and
> (6) Any other circumstance that could tend to shift the balance in
>     favor of or against adjournment . . . .

<u>Id.</u>  at 317-318.  "Because the primary goal of the Convention is to facilitate the recognition and

enforcement of arbitral awards, the first and second factors on the list should weigh more heavily

in the district court's determination."  <u>Id.</u> at 318.  Notably, Ecuador's initial request for a stay

makes no mention of the <u>Europcar</u> factors, and its Second Opposition makes only passing

reference to them.  The Court, finding that the balance of factors weighs against staying the

proceedings, will deny Ecuador's request.

The first factor, the general objectives of arbitration, weighs strongly in favor of confirmation. The BIT, the UNCITRAL Rules, and the New York Convention all require immediate satisfaction of arbitral awards. Chevron submitted its Notice of Arbitration in this matter more than six years ago, a delay that surely does not constitute an "expeditious resolution" of the dispute, which originated in the early 1990s. See G.E. Transport, 693 F. Supp. 2d at 139 (finding that four-year delay "plainly weigh[ed] in favor of confirmation rather than adjournment").

Likewise, the second factor, the status of the foreign proceedings, weighs in favor of immediate confirmation: although the Dutch proceeding is ongoing, the District Court of the Hague issued a decision denying Ecuador's petition to set the award aside more than a year ago, and the appeal will likely not be resolved until late 2013 or early 2014. See Pet., ¶ 34; Kehoe Decl., Exh. 6 (Certified Judgment of the District Court of the Hague).

The third factor, whether the award will receive greater scrutiny in foreign proceedings, is a closer case. According to Chevron's expert, Jacob M.K.P. Cornegoor, who represents Chevron in the Dutch proceeding, "[T]he [Dutch] District Court reviewed the question whether a valid arbitration agreement was formed *de novo*," but reviewed the question of whether the dispute concerned an investment validly covered by the BIT as "one for arbitrators to consider and their answer should be reviewed under a more restrictive standard by the court." Declaration of Jacob M.K.P. Cornegoor, ¶ 4; Certified Judgment, ¶¶ 4.10-4.11. This standard is not so much more exacting than the one applied here that it weighs strongly against confirmation, and, indeed, the fact that the Dutch District Court has already denied the motion to set aside suggests that to the extent the standard is any more searching, it has not helped Ecuador in its attempt to resist confirmation.

The fourth factor does not carry much force either way.  Although the parties dispute whether the vacatur proceedings are an attempt to "hinder or delay resolution of the dispute," the Court cannot say that they are so obviously either legitimate or vexatious that this factor should sway its analysis here.  The fact that the proceedings were initiated to vacate the Award, rather than confirm it, however, does weigh against a stay.

The fifth factor, the balance of hardships, also counsels in favor of immediate confirmation.  As Chevron notes, this dispute is more than twenty years old, and the arbitration itself began more than six years ago.  Although Chevron will be entitled to prejudgment interest, which would continue to accrue in the event of a stay, that is not enough to offset its continued inability to obtain enforcement of its award.  After such an extensive delay, the balance of hardships – and, indeed, the interests of justice – strongly favor immediate confirmation.

Neither side presents any other significant circumstance that should be considered as an additional factor.  Because the balance of the Europcar factors greatly supports immediate confirmation, the Court will deny Ecuador's request for a stay.

**III.     Conclusion**

For the aforementioned reasons, the Court will grant Chevron's Petition and order confirmation of the Award.  A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 6, 2013

23

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHEVRON CORPORATION and
TEXACO PETROLEUM COMPANY,

      Petitioners,

        v.

REPUBLIC OF ECUADOR,

      Respondent.

Civil Action No.  12-1247 (JEB)

## ORDER

As set forth in the accompanying Memorandum Opinion, the Court ORDERS that:

1. Petitioner's Motion to Confirm is GRANTED;

2. The Award of the Arbitral Tribunal is CONFIRMED;

3. Judgment for Chevron is ENTERED in the amount of $96,355,369.17, plus

   compound interest calculated at the New York Prime Rate (annual) from August

   31, 2011, until the date of this ORDER; and

4. The case is DISMISSED.

SO ORDERED.

                     /s/ James E. Boasberg
                     JAMES E. BOASBERG
                     United States District Judge

Date:  June 6, 2013